SNOWDEN & MCSWEENY CO. *v.* HANLEY *et al.*

(In Banc. Dec. 20, 1943.)

[16 So. (2d) 24. No. 35468.]

Henry & Barbour, of Yazoo City, for appellant.

684

Brunini & Brunini, of Vicksburg, **Fielding L. Wright**, of Rolling Fork, **Ray Spivey & Cain**, of Canton, **J. G. Holmes**, of Yazoo City, and **Vinson, Elkin, Weems & Francis** and **Thomas Fletcher**, all of Houston, Tex., for appellees.

Miss Ruth Campbell, of Yazoo City, for appellee.

**Griffith, J.,** delivered the opinion of the court.

The dominant issue in this case is whether one J. R. Williams had, before the institution of this suit, acquired title by adverse possession to the south ten acres of the SE¼ of NE¼, Sec. 35, Tp. 10, R. 3 W., in Yazoo County.

This ten acres has been a part of what was known as the Jeffries land and was so when J. C. Peyton purchased the Jeffries property in 1881. Peyton had his residence on the ten acres mentioned, and some time about 1885 he

constructed a barbed wire fence running along and upon the entire south line of the said SE¼ of NE¼. This fence was then and, according to the great weight of the evidence, has ever since been regarded as the line fence at that point between the Jeffries property and the land to the south.

Williams purchased the Jeffries place in 1911, the deed designating it as such, but the deed was so drawn that the ten acres above mentioned were not included in the description. Williams supposed, however, that his deed called for the land down to the fence line, and he took possession accordingly, the testimony being sufficient to show that at that time the fence was there at and on said south line and in a substantially good condition.

Williams having then taken possession of the said ten acres, the testimony preponderates that from 1911 down to the institution of this suit, some thirty years, he had cultivated a part or parts of the ten acres either by tenants or by hired hands for or during each year with the possible exception of two years, and that at no time had his right to said use and occupancy been questioned, although the owners of the adjoining land to the south, who lived in the immediate neighborhood, knew throughout all that long length of time that Williams was cultivating and using the ten acres as stated. And, according to the weight of the testimony, it was generally reputed and understood in the community that Williams was the owner of the said ten acres and down to the fence line. Some of the cultivated patches approached within a few feet of the fence.

The main issue which the parties have contested and towards which, more than any other, the evidence and argument have been directed, is whether the wire fence had been maintained since 1911 for any continuous period of as much as ten years in such a condition of repair as to effectively turn or hold cattle, this being a test which some of the parties litigant apparently have regarded as

being of controlling importance in the proper decision in the case.

Our statute, Section 2287, Code 1930, does not require an inclosure as an essential to adverse possession, and that our reported decisions do not so require is definitely disclosed by Sproule v. Alabama, etc., R. Co., 78 Miss. 88, 29 So. 163. A hedge-row was held to be sufficient in Jones v. Gaddis, 67 Miss. 761, 7 So. 489. When a fence, or a hedge-row, or the like, is relied upon to delineate the boundaries of the adverse claim the applicable rule is expressed in the latest text on the subject, 1 Am. Jur., p. 870, wherein it is said that "the question in such cases is whether the inclosure, like other acts of possession, is sufficient to fly the flag over the land and put the true owner upon notice that his land is held under an adverse claim of ownership."

The witnesses have differed widely about the fence here in question. Some of them have said that throughout a period amounting to as much as twenty-five years since 1911 the fence has been continuously kept up by repairs from time to time so that throughout it was a substantial farm inclosure, while others have asserted that the fence was down for considerable gaps and never at any time would exclude cattle. If it be conceded that the fence was never at any continuous period of ten years since 1911 sufficient to turn stock, the preponderance of the evidence, when taken in connection with all the other facts heretofore stated, sustains the conclusion nevertheless that the fence was amply sufficient during a continuous period of as much as ten years since 1911 to fly the flag over the land and put the true owner on notice that the land within the fence was being held under an adverse claim of ownership, and this when taken in connection with all the other facts was all that was necessary to be shown.

If the maintenance of an inclosing fence were the only act or indicium of possession and the claim of adverse possession depended solely upon the inclosure, it may

well be that the fence must be of such a character and so maintained for the statutory period as to exclude cattle, but as already stated that is not the case here, and the particular point is mentioned not as decision but by way of reservation.

Many other questions have been raised and argued, all of which we have considered, but we find none which would require a reversal of the decree.

Affirmed.