459 So.2d 773 (1984)
G.E. GADD, et al.
v.
Rayford Wallace STONE and Betsy Gibson Stone.
No. 54275.
Supreme Court of Mississippi.
August 1, 1984.
Rehearing Denied November 28, 1984.
Winn Davis Brown, Jr., Brown, Tillman & Rutherford, Southaven, for appellants.
Christian T. Goeldner, Southaven, for appellees.
Before PATTERSON, C.J., and DAN M. LEE and PRATHER, JJ.
PATTERSON, Chief Justice, for the Court:
In the Chancery Court of DeSoto County, Rayford W. and Betsy G. Stone, husband and wife, filed a bill of complaint to confirm and quiet title, to remove cloud on title and for permanent injunction against Grady E. and Cleo Gadd, husband and wife. The Gadds filed a separate answer and a cross-bill to remove cloud on title.
The chancellor found for the Stones and ordered that title in fee simple be confirmed and quieted in them and that the defendants be permanently enjoined from entering the subject property. Aggrieved with this judgment, the Gadds appeal. They argue the chancellor's decision, that the Stones had acquired title to the Gadds' land by adverse possession, was error because it was reached in absence of proof (1) of the ouster of the Gadds for the ten year statutory period; or (2) that the Stones' use of the property was exclusive and hostile. Further the Gadds assign as error that the court failed to apply the doctrine of constructive possession for the benefit of the Gadds, and that the court failed to recognize that the Stones' use of the Gadds land was a mere continuation of a permissive use.
This case is a boundary dispute between owners of adjacent tracts of land outside the Olive Branch city limits in DeSoto County. According to the deeds of both parties and the admission of the Stones, the common boundary is the section line common to sections 23 and 24. See Appendix "A". Therefore the Gadds hold record title to the disputed area, which contains a gravel road used by both parties.
When the Gadds acquired title to their property from Cary Garrett in 1951, Garrett *774 informed Gadd that the barbed wire fence near the eastern boundary was not a property line fence. Instead, the property line was east of the gravel road.
When Rayford Stone bought his property in 1952, he assumed the barbed wire fence marked the western boundary. No one told him otherwise until 1976, when the Gadds sold a 1 1/2 acre lot to a local church. Shortly after the sale, Mrs. Stone discovered church members taking down the fence. She informed them that this was the "line fence" and that they should speak with her husband before continuing to take it down.
This led to a confrontation between Stone and Gadd. According to Gadd,
Well, I told him that the fence wasn't the property line, that it was East [sic] of the road, where the property line was. He asked me, said, "Did you have yours surveyed?" I said, "Naw." I said, "Did you have yours surveyed when you bought it?" He said, "Naw." I said, "Well," I said, "Let's get a surveyor in here and have it surveyed and I'll pay half and you pay half," and he wouldn't do it... . He asked me, "Well, what do you want me to do, build me another road?" I said, "Naw, use this road that's already here."
Shortly thereafter, Gadd took down the fence and hauled away the posts and wire.
No one attempted to rebuild the fence, and there was no more controversy until the summer of 1980, when the Gadds' son Quinton Gadd completed a house on the northeast corner of his parents' property. The Gadds connected Quinton's new driveway with the road, prompting the Stones to forbid the Gadds to use the road on the disputed area. Further, the Stones filed this suit against the Gadds.
The issue presented is whether the Stones proved their title based on adverse possession. As we held in Eady v. Eady, 362 So.2d 830, 832 (Miss. 1978),
... Persons relying on adverse possession as basis for their claim of title have the burden of proof on the issue. Kayser v. Dixon, 309 So.2d 526, 528 (Miss. 1975). For title to ripen in a claimant by adverse possession, the occupancy must be "actual, adverse, hostile, exclusive, peaceful, uninterrupted and continuous, under claim of ownership, open, notorious, and visible for the statutory period of ten years." (Citation omitted.) (Emphasis added.)
Having reviewed the evidence, we conclude it is insufficient to support a finding of adverse possession.
Turning first to the question of exclusive possession, we note testimony by both parties shows that since the Stones acquired title to their property, use of the disputed land has been joint or scrambling. The Stones and the Gadds used the road for access to their lands. It is well settled that joint use of property is insufficient to establish adverse possession. Fant v. Standard Oil Co., 247 So.2d 132 (Miss. 1971).
Secondly, Stone's own testimony disproves the hostility of the Stones' possession for the ten year statutory period. On cross-examination Stone stated he had seen the Gadds use the road on the property in question but did not direct them to stop until July 1980. Further, Grady Gadd testified when he informed Stone in the summer of 1976 that the property line was east of the road, Stone replied, "Well, what do you want me to do, build me another road?" to which Gadd replied, "Naw, use this road that's already here."
In addition to establishing that the Stones' possession of the property was not hostile for the specified amount of time, the foregoing testimony reveals the Stones' use of the road was a permissive one at least until July 1980. As we held in Patterson v. Harris, 239 Miss. 774, 785-86, 125 So.2d 545, 550 (1960):
In the case of Weaver v. Pitts, 1926, 191 N.C. 747, 133 S.E. 2, 3, the Court said: "The law should, and does, encourage acts of neighborly courtesy. A landowner who quietly acquiesces in the use of a path, or road, across his uncultivated land, resulting in no injury to him, but in great convenience to his neighbor, ought *775 not to be held to have thereby lost his rights. It is only when the use of the path or road is clearly adverse to the owner of the land, and not an enjoyment of neighborly courtesy, that the landowner is called upon `to go to law' to protect his rights."
In his findings of fact the chancellor referred to the disputed fence as a "boundary fence" and appears to have relied on this characterization in reaching his decision. We have held adverse possession is proved where "the appellants took possession of said land, enclosed same with a fence, built a storage house upon it, cultivated a garden, and claimed and used the land as their own against the world for a period of twenty-five years." Pittman v. Simmons, 408 So.2d 1384, 1386 (Miss. 1982). (Emphasis added.)
However, we are of the opinion factual distinctions render Pittman inapplicable to this case. First, the Stones did not build the fence in question; it was standing at the time they purchased their property. Cary Garrett, the Gadds' predecessor in interest, permitted the fence to be moved westward away from the property line so as to make higher ground available for a roadway between the properties, an act of courtesy toward tenants of the Stones' predecessor in interest. Thus by the time the Stones acquired title, the fence was no longer a boundary fence but a pasture fence. Further, as previously discussed, the Stones have not used the disputed land "as their own against the world" for the statutory period.
Because the Stones failed to prove hostile and exclusive possession for a period of ten years of the land to which the Gadds hold record title, we conclude the trial court erred in holding the Stones acquired title to the disputed property through adverse possession.
REVERSED AND RENDERED.
WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.

*776 APPENDIX A