468 So.2d 58 (1985)
Boyd L. DAVIS and Ray Ellis Davis
v.
Diana H. CLEMENT, Ronald R. Lott, Emelda B. Lott, Artis Mark, Jr., Sharon N. Mark, Jane W. Melton, William E. Melton, Mary Gaston Melton Buchler, Julius W. Melton, Jr., Crown Zellerbach Corporation, C.O. Trest, Marion T. Hardwick, Elizabeth W. Trest and Suellen T. Verger.
No. 55239.
Supreme Court of Mississippi.
April 24, 1985.
*59 Conrad Mord, Tylertown, for appellants.
John T. Armstrong, Jr., Edward E. Patten, Jr., Armstrong & Hoffman, Hazlehurst, Joseph M. Stinson, Tylertown, John Mark Weathers, James D. Johnson, Aultman, Tyner, McNeese, Weathers & Gunn, Hattiesburg, for appellees.
Before WALKER, P.J., and HAWKINS and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
In this action the owners of an 80 acre tract of land in Walthall County, Mississippi, claimed that they had adversely possessed some 70 additional and adjacent acres and sought to confirm in them title thereto. At the conclusion of the would be adverse possessers' proof, the chancery court sustained the record title holders' motion to dismiss, holding the adverse possessors' purported acts of possession sporadic and ineffectual and, as a matter of law, insufficient to fly the flag of ownership over the disputed acres for the requisite ten year period. For the reasons set forth below, we affirm.

II.
Boyd L. Davis and Ray Ellis Davis, Plaintiffs below and Appellants here, commenced this civil action on February 12, 1982, by filing in the Chancery Court of Walthall County, Mississippi, their complaint to quiet and confirm title. After various pretrial proceedings, the matter was called for trial on July 25, 1983, Honorable R.B. Reeves, Chancery Judge, presiding.
The evidence reflects that Boyd L. Davis and Ray Ellis Davis are the owners of record title to an eighty acre tract of land consisting of the east one-half of the northwest quarter of Section 27, Township 1 North, Range 13 East, Walthall County, Mississippi. This is some two to two and a half miles southeast of Improve, Mississippi.
The disputed lands with respect to which the Davises have asserted a claim of adverse possession comprise approximately seventy (70) additional acres and lie adjacent to the Davises' land to the south, east and north. Record title to various portions of the disputed lands and various interests therein lie in Diana H. Clement, Ronald R. Lott, Emelda B. Lott, Artis Mark, Jr., Sharon N. Mark, Jane W. Melton, William E. Melton, Mary Gaston Melton Buchler, Julius W. Melton, Jr., Crown Zellerbach Corporation, *60 C.O. Trest, Marion T. Hardwick, Elizabeth W. Trest and Sue Ellen T. Verger. These parties were the Defendants below and are the Appellees here.
The Davises sought to prove adverse possession of the disputed 70 acres for a period in excess of thirty-five (35) years. Through only two witnesses, Boyd L. Davis and a surveyor, W.I. Connerly, the Davises sought to establish that they had kept the lands under fence, had grazed cattle and grown timber thereon, and had sold gravel therefrom. The testimony on each of these points was vague, imprecise and incomplete.
The thrust of the Davises' case centers upon the testimony of Boyd L. Davis regarding the fence. Davis testified that in 1946 he helped his grandfather patch and repair a fence around the disputed land. He stated further that several years later he was on the property to help plant trees and the fence was still there. In time, however, Davis concedes that the fence fell into a state of disrepair or disappeared altogether. A timber cutting operation destroyed much of the fence. Other parts were destroyed as gravel was removed.
Importantly, the Davises never established that the disputed area had been effectively fenced for ten consecutive years. Further, the Davises offered no testimony to the effect that either they or their predecessors in title ever intended that the fence establish a claim of ownership to the property. W.I. Connerly, the surveyor, testified that he surveyed the fence line around the disputed property in 1971. He found remnants of an old fence that had fallen into alternate states of disrepair or disuse. He could not remember if he was working for Davis or for Clements/Trest.
The Davises also rely upon the gravel sales made to Walthall County. Apparently this occurred on several occasions over a period of years, although the record is devoid of evidence of dates, identity of the parties engaging in the gravel removal operations, and the precise location of the lands from which the gravel was removed. One exhibit reflects sales from a gravel pit located partly on lands the record title of which is vested in the Davises and partly on the lands of Appellee Clement. No evidence reflected from which part of the pit the gravel was taken when sold. For aught that appears, it could have come solely from the lands record title of which is vested in the Davises.
Davis testified that he planted some trees on the disputed property within a year or two after 1948. There is no evidence reflecting the number of trees planted or the exact area where they were planted. Further there is no evidence showing Davis' intent to possess the lands in dispute by this planting. There is no evidence that the Davises or their predecessors ever cut, sold or removed any timber from the disputed property.
The evidence reflects that the Davises leased the eighty (80) acre tract which he owned to a Mrs. Strogner from 1948 or 1949 until 1973 or 1974 and to a Harold Lott in 1976. There is no direct evidence, however, that either Mrs. Strogner or Mr. Lott ever went on the disputed property or used it for any purpose. Indeed, there is no evidence that Davis ever went on the property other than the incident in 1946 when he helped his grandfather repair fences, the incident in 1948 where he planted trees and in 1982 when he took photographs in preparation for trial. The record is silent as to whether other members of the Davis family, Mary Lee Davis or Ray Ellis Davis, ever went on the property.
The record reflects that the Davises paid taxes consistently on only eighty (80) acres of land. They never made any attempt to have the full one hundred and fifty (150) acres placed on the tax roles or have the additional acreage assessed to them.
Once their two witnesses, Boyd L. Davis, who is one of the plaintiffs, and W.I. Connerly, a surveyor, had completed their testimony, Plaintiffs rested, whereupon all Defendants moved the Court to dismiss the action by reason of Plaintiffs' failure to establish a prima facie case. In a bench opinion, the Chancellor granted the motion. On August 18, 1983, a final decree was *61 entered carrying into effect the Chancellor's bench ruling. In due course thereafter, the Davises perfected this appeal.

III.
We emphasize the procedural posture of the case. The Plaintiffs Davis presented their case and rested. At that point the Defendants moved the trial court that, as a matter of law, the Davises had failed to make out a prima facie case. Applying the controlling rules of law  including that regarding the burden of proof  the thrust of Defendants' motion was that, considering the evidence then before the Court, Defendants were entitled to entry of judgment. Such a motion invokes Rule 41(b), Miss.R.Civ.P.
We emphasize that this motion was presented to a trial judge sitting without a jury. In such a setting, the trial court is not required to look at the evidence in the light most favorable to the plaintiff, giving the plaintiff the benefit of all reasonable favorable inferences. Notions emanating from Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652 (Miss. 1975), and many other similar cases  whether arising in the context of a motion for a directed verdict, a request for a peremptory instruction or a motion for judgment notwithstanding the verdict  have no application here. Those familiar rules apply only in jury trials where we are concerned that rights secured by Miss.Const. Art. 3, § 31 (1890) (right to trial by jury in civil cases) be respected. See City of Jackson v. Locklar, 431 So.2d 475, 478 (Miss. 1983).
Put differently, Paymaster Oil and progeny require that the evidence be viewed in the light most favorably to the non-moving party, solely because this is the only means we have devised for protecting the non-moving party's constitutional right to have a jury pass on the factual questions in the case. When the trial judge sits without a jury, no such constitutional rights come into play.
Here the question presented to the trial judge, sitting without a jury, is whether, considering the evidence which has been offered by the plaintiff (which, of course, is all of the evidence then before the court), and giving it such weight and credibility as it would be entitled to were the trial judge engaged in making final findings of fact and rendering final judgment, the trial judge concludes that plaintiff has made out a case which if not rebutted would entitle him to judgment. The trial judge must, as a matter of law, deny the motion to dismiss and require the Defendant to go forward with his evidence if, and only if, considering that the evidence offered by the plaintiff were all of the evidence to be offered in the case, the trial judge would be obligated to find in favor of the plaintiff.
If, considering the evidence fairly, as distinguished from in the light most favorable to the plaintiff, the trial judge would find for the defendant  because plaintiff has failed to prove one or more essential elements of his claim, because the quality of the proof offered is insufficient to sustain the burden of proof cast upon the plaintiff, or for whatever reason  the proceeding should be halted at that time and final judgment should be rendered in favor of the defendant.[1]
Obviously, when there is doubt, the trial judge generally ought to deny the motion to exclude and dismiss but such is the exercise of sound discretion, not obligation imposed by law.
The construction we here give Rule 41(b), Miss.R.Civ.P., is wholly consistent with that given Federal Rule 41(b) upon which our rule has been patterned. See, e.g., Hersch v. United States, 719 F.2d 873, 876-877 (6th Cir.1983); Cox v. C.H. Masland & Sons, Inc., 607 F.2d 138, 144 n. 8 (5th Cir.1979); Woods v. North American Rockwell Corporation, 480 F.2d 644, 645-646 (10th Cir.1973); Emerson Electric Co.
*62 v. Farmer, 427 F.2d 1082, 1086 (5th Cir.1970).
Other states, like Mississippi, have adopted rules of civil procedure derived from the Federal Rules of Civil Procedure. A sampling of the manner in which our sister states have construed their Rule 41(b) is likewise consistent with and supportive of the view we take here. See, e.g., Sevin v. Shape Spa For Health & Beauty, Inc., 384 So.2d 1011, 1013 (La. Ct. App. 1980); Metropolitan New Orleans Chapter of Louisiana Consumer's League v. Council of City of New Orleans, 423 So.2d 1213, 1215 (La. Ct. App. 1983); Lumbee River Electric Membership Corporation v. City of Fayetteville, 309 N.C. 726, 741-42, 309 S.E.2d 209, 218-219 (1983); Mackey-Woodard, Inc. v. Citizens State Bank of Cheney, 197 Kan. 536, 550-52, 419 P.2d 847, 858-860 (1966); Baker v. R.D. Andersen Construction Co., Inc., 7 Kan. App.2d 568, 579, 644 P.2d 1354, 1363 (1982).
A corollary principle informs our scope of review in cases such as this. Where, as here, a motion to exclude and dismiss has been granted at the end of the plaintiff's case, the trial judge sitting without a jury has necessarily performed his fact finding function and has made a judgment that, even in the absence of evidence offered by the defendant, the facts are such that under the applicable law the plaintiff is entitled to no relief. He has found the facts the same as in other cases. For this reason, we do not consider the evidence de novo, but rather we apply the same substantial evidence/manifest error standards as are generally applicable when we are reviewing the findings of trial judges. See McNair v. Capital Electric Power Association, 324 So.2d 234, 238-239 (Miss. 1975); Culbreath v. Johnson, 427 So.2d 705, 707-709 (Miss. 1983); Cotton v. McConnell, 435 So.2d 683, 685 (Miss. 1983); Neal v. State, 451 So.2d 743, 753 (Miss. 1984); see also, Woods v. North American Rockwell Corporation, 480 F.2d 644, 646 (10th Cir.1973); and Lumbee River Electric Membership Corporation v. City of Fayetteville, 309 S.E.2d 209, 219 (N.C. 1983); see also, Anderson v. City of Bessemer City, N.C., ___ U.S. ___, 105 S.Ct. 1504, 84 L.Ed.2d 518 (Mar. 19, 1985).
We call the trial judges' attention to the fact that when he grants a motion to dismiss at the close of the plaintiff's case, he should enter into the record his findings of fact and conclusions of law. The failure to do so leaves an appellate court in the position of having to guess at the trial judge's reason for granting the motion and may result in a finding of manifest error when in truth there was none.

IV.
The Davises sought to establish their claim of adverse possession under Miss. Code Ann. § 15-1-13 (1972). That statute by its terms requires adverse occupancy continuously and uninterruptedly for a period of ten (10) years or more. Our case law has established beyond peradventure that the party claiming under this statute must prove not only his possession but that his possession is (1) actual; (2) hostile and under claim of ownership; (3) open, notorious and visible; (4) exclusive; (5) peaceful, and (6) continuous and uninterrupted for a period in excess of ten years. Kayser v. Dixon, 309 So.2d 526, 528 (Miss. 1975); Eady v. Eady, 362 So.2d 830, 832 (Miss. 1978); Gadd v. Stone, 459 So.2d 773, 774 (Miss. 1984).
The rule is well settled that both the quality and quantity of possessory acts necessary to establish a claim under Section 15-1-23 may vary with the characteristics of the land. In the case of "wild" or unimproved lands, adverse possession may well be established by evidence of acts that would be wholly insufficient in the case of improved or developed lands. Kayser v. Dixon, 309 So.2d 526, 529 (Miss. 1975); McCaughn v. Young, 85 Miss. 277, 292-93, 37 So. 839, 842 (1904).
The question is whether the possessory acts relied upon by the would be adverse possessor are

*63 sufficient to fly ... [his] flag over the land and put the true owner upon notice that his land is held under an adverse claim of ownership.

Snowden & McSweeny Co. v. Hanley, 195 Miss. 682, 687, 16 So.2d 24, 25 (1943).
There is no need to dawdle over how the voluminous authorities regarding adverse possession construe each of the above elements. The Davises' claim fails on practically every score. The evidence reflects only an intermittent involvement with this land on the part of the Davises  the word "possession" is even too strong. It is not clear that the evidence would be sufficient even to sustain the notion that the Davises have established a "scrambling possession" of the lands. See Fairley v. Howell, 159 Miss. 668, 674, 131 So. 109, 110 (1930).
Despite protestations to the contrary, the record reveals that all the Davises really have to base their claim on is an old barbed wire fence. In this sense, the case is analogous to Peoples Realty & Development Corp. v. Sullivan, 336 So.2d 1304, 1305 (Miss. 1976), which held:
"Sporadic and temporary activity on the property is not sufficient to give notice of an adverse claim, nor is an owner put upon such notice by occasional pasturing of cows, or by occasional cutting of timber."
336 So.2d at 1305.
In Peoples, the fence ran across a reed break, could not be seen by the record title holder and was not sufficient to put him on notice. Also, occasional pasturing of cows and cutting of timber were sporadic and insufficient to fly the flag of ownership.
A quick perusal of this Court's recent pronouncements in much closer cases will suffice to show the inadequacy of the fallen and meandering fence to support the Davises' claim. See Gadd v. Stone, 459 So.2d 773, 774-75 (Miss. 1984) (mere existence of fence and arguably permissive use insufficient for adverse possession); Trotter v. Gaddis & McLaurin, Inc., 452 So.2d 453, 456-57 (Miss. 1984) (degree to which existence of fence must be supplemented by other evidence); Pittman v. Simmons, 408 So.2d 1384, 1386 (Miss. 1982) (what activity within fenced area shows open and hostile possession).
Having in mind the standards described in Section III, we hold that the chancellor's decision granting Defendants' motion to dismiss at the end of the Davises' case was well within the evidence, considered under the controlling rules of substantive law.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] We regard the contrary suggestion in Richardson v. Langley, 426 So.2d 780, 782 (Miss. 1983), that in this procedural setting in a non-jury case the trial judge was required to consider the evidence in the light most favorable to plaintiff, as inadvertent dicta.