469 So.2d 88 (1985)
Jeannean JOHNSON, Executrix of Estate of Lauree Mizell, Deceased
v.
John E. BLACK, W.K. Black and Leon Beech.
No. 54740.
Supreme Court of Mississippi.
May 15, 1985.
*89 W.S. Murphy, Murphy & Shepard, Lucedale, for appellant.
William T. Bailey, Lucedale, for appellees.
Before WALKER, P.J. and ROBERTSON and ANDERSON, JJ.
ROBERTSON, Justice, for the Court:
Today we mark the conclusion of the second, and, we fervently hope, final round in this now eight year old battle over approximately seventy-eight acres of pasture land in George County, Mississippi.
The record title holders are John E. Black and W.K. Black. The heirs of Joe and Lauree Mizell[1] claim by adverse possession. In the first trial, the Chancery Court of George County rejected the Mizell adverse possession claim. On April 18, *90 1979, we reversed because the chancery court had excluded the testimony of Joe Mizell's widow, Lauree Mizell, on the authority of the dead man statute: Miss. Code Ann. § 13-1-7 (1972). Mizell v. Black, 369 So.2d 755 (Miss. 1979). Appropriate to the context, we then stated
We do not include in this opinion a finding as to whether or not the chancellor was correct in finding as a fact that Appellant [Mizell] did not own the property by adverse possession.
369 So.2d at 757.
The case was remanded for trial de novo.
The second trial was held in early March of 1982 before a different chancellor. Lauree Mizell was allowed to testify. She added little, however, and in consequence on March 18, 1982, the Chancery Court of George County released an opinion again adjudging that Mizell had failed to establish her claim of adverse possession. From this adverse ruling, Lauree Mizell's Executrix has appealed.
The adverse possession issue in this case  without doubt, the dispositive issue  is essentially one of fact. It requires little familiarity with the institutional structure of our judicial system to know that this Court does not sit to redetermine questions of fact. Our scope of review is severely limited. Bay Springs Forest Products, Inc. v. Wade, 435 So.2d 690, 693 (Miss. 1983). We announce no novel premise when we advise Lauree Mizell's Executrix that we do not here consider the evidence de novo but rather that we apply the familiar substantial evidence/manifest error test. Davis v. Clement, 468 So.2d 58, 61 (Miss. 1985); Culbreath v. Johnson, 427 So.2d 705, 707-709 (Miss. 1983); cf. Anderson v. City of Bessemer City, North Carolina, ___ U.S. ___, 105 S.Ct. 1504, 1511-1513, 84 L.Ed.2d 518, 528-530 (1985). Suffice it to say that we have no authority to grant appellant any relief if there be substantial credible evidence in the record undergirding the determinative findings of fact made in the chancery court.
To be sure, our two most recent pronouncements in adverse possession versus permissive use cases such as this have each resulted in reversals on the facts: Gadd v. Stone, 459 So.2d 773 (Miss. 1984) and Trotter v. Gaddis & McLaurin, Inc., 452 So.2d 453 (Miss. 1984). Gadd effects a reversal of a chancellor's determination that would-be adverse possessors had established the elements of their claim under Miss. Code Ann. § 15-1-13 (1972), and hence Gadd appeals strongly to the Blacks. Trotter, on the other hand, reverses a chancellor's rejection of an adverse possession claim, and hence is cited with fervor by Mizell's executrix. The decisions in Gadd and Trotter  as, indeed, is the case in all litigation such as this, are largely the result of the unique facts and circumstances adduced at trial. Though upon review each case appears entirely correct on the evidence presented, we trust no one will misread either Gadd or Trotter as a retreat from the traditional substantial evidence/manifest error standards noted above and repeated in so many cases.
Turning to the merits, our law requires that a party claiming title by adverse possession must prove that his possession of the lands in issue has been and is (1) open, notorious and visible; (2) hostile, (3) under a claim of ownership, (4) exclusive, (5) peaceful, and (6) continuous and uninterrupted for a period in excess of ten years. Gadd v. Stone, 459 So.2d 773, 774 (Miss. 1984); Eady v. Eady, 362 So.2d 830, 832 (Miss. 1978); Kayser v. Dixon, 309 So.2d 526, 528 (Miss. 1975).
The principle is also accepted that both the quality and quantity of possessory acts necessary to establish a claim of adverse possession may vary with the characteristics of the land. Adverse possession of "wild" or unimproved lands may be established by evidence of acts that would be wholly insufficient in the case of improved or developed lands. Kayser v. Dixon, 309 So.2d 526, 529 (Miss. 1975); McCaughn v. Young, 85 Miss. 277, 292-293, 37 So. 839, 842 (1904). The question in the end is whether the possessory acts relied upon by the would be adverse possessor are sufficient *91 to fly his flag over the lands and to put the record title holder upon notice that the lands are held under an adverse claim of ownership. Snowden & McSweeny Co. v. Hanley, 195 Miss. 682, 687, 16 So.2d 24, 25 (1943).
A corollary to these principles  important to resolution of the case at bar  is that possession with permission of the record title holder is never sufficient to establish adverse possession and ripen into title in the adverse possessor no matter how long continued. Eady v. Eady, 362 So.2d 830, 832 (Miss. 1978); St. Regis Pulp & Paper Corp. v. Floyd, 238 So.2d 740, 743 (Miss. 1970). Permissive possession of land does not confer title in the person in permissive possession until a positive assertion of right hostile to the record title holder has been made known to him. Hewlett v. Henderson, 431 So.2d 449, 451 (Miss. 1983).
Of importance here is that the claim of adverse possession is predicated upon the conduct of the grantor in the deed under which the Blacks hold record title. The Mizells, heirs of the estate of Mal Mixon, deceased, on November 21, 1955, executed a quitclaim deed conveying the disputed 78 acres to one Leonard Fortner. Under the theory advanced by Mizell's executrix, in the spring of 1956, Joe Mizell, husband of Lauree Mizell, took possession of the land in controversy and began his adverse possession of it. While conveyance does not prevent a grantor from subsequently re-acquiring title by adverse possession as against his grantee, continued possession of land by the grantor after execution of a deed is presumed, in the absence of substantial evidence to the contrary, to be in subordination to the title of the grantee. Hewlett v. Henderson, 431 So.2d 449, 451 (Miss. 1983).
The evidence offered by Mizell through numerous witnesses is that beginning in 1956 Joe Mizell kept the land under fence and marked with posted signs. Mizell used the land as pasture land. The chancellor, however, found that this use was with permission, and we regard Mizell's evidence as wholly consistent with the finding that Mizell "has shown at best, continued permissive use".
Subsequent to the Mizell-to-Fortner conveyance of 1955, the record reflects that in 1961 and 1962, via two separate warranty deeds, Leonard Fortner conveyed the property to W. Bennett Easterling; and that on June 23, 1971, Easterling conveyed the property to the Blacks. The first evidence that a Mizell did anything inconsistent with the chancellor's permissive use finding is the 1977 incident when Lauree Mizell objected to the Blacks cutting timber from the land. After the Blacks acquired the land in 1971, the evidence reflects that they gave Lauree Mizell permission to continue pasturing her cattle on the land. In 1975-76, the Blacks gave Mizell permission to put up a three strand barbed wire fence to turn cattle as much of the old fence had fallen into a state of disrepair. In 1977, the Blacks telephoned Mizell and told her to get her cows off the land because they were going to cut the timber on it.
No useful purpose would be served by a further recitation of the voluminous testimony in this case, the extent of which is suggested by the fact that a summary consumed 32 pages of the brief filed on behalf of Mizell's executrix. The chancellor's findings of permissive use to the exclusion of adverse possession are well within the evidence. Application of the principles of law described above to the facts of this case mandate a final adjudication that title to the lands in issue remains in the Blacks notwithstanding the permissive use and occupancy heretofore by the Mizells. Gadd v. Stone, 459 So.2d 773 (Miss. 1974).
This civil war began in 1977 when Lauree Mizell had the Blacks' and their forester arrested for cutting timber on the land. The war has raged for eight years. Indeed, it has outlasted its progenitor, Lauree Mizell. Confident that peace would be of advantage to all concerned and that the lawyers here involved need a new lawsuit, we hope what we have said today sounds finis.
AFFIRMED.
*92 PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER and ANDERSON, JJ., concur.
SULLIVAN, J., not participating.
NOTES
[1] Joe Mizell died on April 29, 1969. Lauree Mizell died on March 30, 1982, after the trial below. Jeannean Johnson prosecutes this appeal as Executrix of the Last Will and Testament of Lauree Mizell.