722 So.2d 1277 (1998)
Clemmie Lee WALKER, Appellant,
v.
Fred H. MURPHREE, Appellee.
No. 97-CA-00479 COA
Court of Appeals of Mississippi.
October 27, 1998.
*1278 Robert S. Cooper, Bruce, Attorney for Appellant.
Ottis B. Crocker, Jr., Bruce, Attorney for Appellee.
Before BRIDGES, C.J., COLEMAN, AND HERRING, JJ.
HERRING, J., for the Court:
¶ 1. Clemmie Lee Walker appeals from the decision of the Chancery Court of Calhoun County, Mississippi, which (1) granted injunctive relief to the Appellee, Fred H. Murphree; (2) denied Walker's adverse possession claim; and (3) ordered Walker to remove three houses which he had located upon Murphree's land. The chancellor also enjoined both Walker and Murphree from bothering, threatening, or harassing each other or from further trespass upon the other's land.

A. THE FACTS
¶ 2. On August 13, 1996, Fred H. Murphree filed his petition for injunctive relief against Clemmie Lee Walker, alleging that Murphree owned certain real property located in Bruce, Mississippi, and that Walker had moved three houses onto said property thereby encroaching upon Murphree's land. Murphree asked for an order enjoining Walker from leaving the houses on Murphree's property, together with actual and punitive damages. Walker asserted the affirmative defense of adverse possession, and this action was presented for trial on August 22, 1996.
¶ 3. At the conclusion of the testimony of Donald S. Bell, Murphree's first witness, it became evident that the parties had failed to join all of the necessary parties to the action. The chancellor then continued the case until September 26, 1996, at which time all of the necessary parties had been joined and were present at trial. At the conclusion of the testimony on September 26, 1996, the court and the parties made an "on site" inspection of the property, and the parties were instructed to submit proposed findings of fact, conclusions of law, and a proposed order if they wished to have them considered prior to the court taking the matter under advisement.
¶ 4. On March 15, 1994, Walker purchased property situated north of and adjoining the property belonging to Murphree from Larry West and his wife, Prentice West. Murphree purchased his property on June 3, 1985, from the heirs of E.D. Winters and his wife, Euris Winters. The dispute in this case concerns the location of the boundary line between the parcel of land owned by Murphree and the parcel owned by Walker. Over the years, ditches were constructed on and around the subject properties and the ditch which is the subject of this controversy runs east and west across the disputed land which is claimed by both parties. Walker claims that his property extends south to the center line of the ditch. Murphree claims that the ditch is wholly located within his land and that his property line extends north beyond the ditch.
¶ 5. Prior to March, 1996, the boundary between the properties owned by Murphree and Walker was not the subject of dispute. However, when Walker moved three frame houses onto the land directly north of the ditch during March, 1996, Murphree protested. Murphree retained Donald S. Bell, a registered surveyor, to survey his land using Murphree's deed for reference. Bell's survey, as shown in Exhibit "A" attached hereto, indicated that each of Walker's frame houses encroached upon Murphree's land or upon land belonging to Murphree and his mother, brother, and sister. These encroachments varied from eight to ten feet. As stated, the court determined at the conclusion of Bell's testimony that there were necessary parties *1279 who had not been joined, and the case was continued to September 26, 1996.
¶ 6. When the trial reconvened, Murphree recalled Bell. Bell testified that he used calls of the deed which was provided to him by Murphree to determine the boundary lines and that he did not consider any "usage lines" when he made his drawing. Murphree then called his brother, Dewey Murphree, who testified that the ditch was never used as a property line but that Larry West, Walker's predecessor in title, used the land north of the ditch for a garden and mowed the property up to the ditch. Dorothy Johnson, Murphree's sister, testified that her brother used the land south of the ditch but did not use the land north of the ditch. However, she had never known the ditch to be a property line.
¶ 7. Murphree then called Linda Aron, the daughter of E.D. Winters and his wife, Euris Winters, both deceased and Murphree's predecessors in title. Aron testified that the original purpose of the ditch was to assist with drainage of water from neighboring property. She testified that the ditch had never been considered to be a boundary line, and she had no knowledge of how the property on either side of the ditch was used. Murphree testified that he was living on his property when Larry West purchased the property to the north in 1967, and had never mowed or attended to the property north of the ditch. He stated that before he sold to Walker, West mowed the north side of the ditch. After West was employed by the City of Bruce to mow grass, he mowed both sides of the ditch. Murphree acknowledged that West maintained a yearly garden on the north side of the ditch prior to his sale to Walker. However, when Walker moved the houses onto the area just north of the ditch, Murphree immediately protested. As stated, he retained Bell to prepare a drawing of his land using the calls of his warranty deed as a reference, and filed a petition to enjoin Walker to remove the houses from his property. Finally, Murphree testified that the lawsuit cost him approximately $1,600 in survey and legal fees.
¶ 8. Walker called Larry West to testify as his first witness. West stated that he purchased the property which he later sold to Walker in 1967 from Billy Parker. He continually lived on the property until Walker purchased it in March, 1994. West testified that prior to the existence of the ditch, a fence was located on what is now the north edge of the ditch. He testified that from 1967, when he purchased the land, until 1992, he maintained a garden on the north side of the ditch. Walker said that he mowed the north side of the ditch before he became employed by the City of Bruce to mow grass, and thereafter, he mowed the south side also. In addition to maintaining a garden and mowing the grass north of the ditch, West testified that from 1967 until 1994, he never saw Murphree make use of the property. West also testified that the ditch in question had been at its present location for at least ten years.
¶ 9. Walker testified that during the two years after he purchased the property from West he occupied all of the property in question up to the north edge of ditch and continually mowed the property. At various times, he parked two eighteen-wheeler tractors and trailers on the premises, along with five or six junk cars. In addition, Walker's tenant worked a garden on the property. Walker stated that prior to purchasing the land from West, West told him that the southern boundary of the property ran to the center of the ditch.
¶ 10. On one occasion, used motor oil was dumped into the ditch by someone working at the shop on Walker's land. Walker testified that Murphree told him that the Environmental Protection Agency (EPA) would make them pay for the clean up because "we owned it" referring to the ditch. According to Walker, "Mr. Murphee was standing on his side of the land and I was standing on my side. He asked me who did it. I told him I didn't. I told him I would find out who did it. He said well, I guess you know, they can make me and you pay for that, EPA or EDA or somebody, environmental people."
¶ 11. Murphree also claimed to have had a conversation concerning the EPA, but with Charles Byrd, a man who lived up the road, and not with Walker. Murphree testified as follows: "And the only reason I said something *1280 about that is because EPA could come in there and make you dig all that dirt up in that ditch and everything and make you put fresh dirt back in there. That's the only reason I said anything to ... Charles Byrd about it, and that would be the property owner on both sides of the ditch that would have to pay for that."

B. THE ISSUES
¶ 12. Walker raises a single assignment of error which is taken verbatim from his appellate brief:

WHETHER THE LOWER COURT ERRED IN IT'S [SIC] FINDING THAT WALKER'S PROOF FAILED TO ESTABLISH A SUCCESSFUL CLAIM FOR ADVERSE POSSESSION.
¶ 13. Appellee Murphree cross-appealed, raising the following assignment of error which is taken verbatim from his brief:

WHETHER THE COURT ERRED IN FAILING TO AWARD DAMAGES AND ATTORNEY FEES TO APPELLEE/CROSS-APPELLANT, MURPHREE.

C. ANALYSIS

DID THE TRIAL COURT ERR IN FINDING THAT WALKER'S PROOF FAILED TO ESTABLISH A SUCCESSFUL CLAIM FOR ADVERSE POSSESSION?
¶ 14. We begin with the Appellant's assignment of error, which if decided in his favor, would eliminate the need for reviewing Murphree's cross-appeal. Although we note that neither party filed an action to remove a cloud or to confirm and quiet title to the property in question pursuant to Mississippi Code Annotated Sections 11-17-29 and 11-17-31 (1972), the affirmative defense of adverse possession was sufficiently raised in Walker's answer to Murphree's petition for injunctive relief to allow us to resolve this issue. See Pittman v. Simmons, 408 So.2d 1384, 1387 (Miss.1982).

STANDARD OF REVIEW
¶ 15. Whether or not the chancellor erred in finding that Walker's proof failed to establish a successful claim for adverse possession is a question of fact. In this regard, our supreme court stated the following in Rawls v. Parker, 602 So.2d 1164, 1167 (Miss. 1992):
This Court's scope of review requires the application of the substantial evidence/manifest error test to questions of fact. Johnson v. Black, 469 So.2d 88, 90 (Miss.1985). As this court stated in Johnson:

It requires little familiarity with the institutional structure of our judicial system to know that this Court does not sit to redetermine questions of fact. Our scope of review is severely limited.... Suffice it to say that we have no authority to grant appellant any relief if there be substantial credible evidence in the record undergirding the determinative findings of fact made in the chancery court. Johnson, 469 So.2d at 90 (citations omitted).
Regarding what finding of fact could be considered clearly or manifestly erroneous the supreme court stated:
One expression is that "a finding of fact" is "clearly erroneous" when: although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made. Moreover, to the point of credibility, a trial judge has no authority arbitrarily to reject the testimony of a witness otherwise plausible on its face, particularly where that testimony is substantially corroborated. Cf. Heidel v. State, 587 So.2d 835, 839 (Miss.1991). We are left in the end with guides to judgment and not rules susceptible of mechanical application.
In the Matter of the Estate of Robert Taylor v. Thompson, 609 So.2d 390, 393 (Miss.1992) (citations omitted). See also Rawls v. Parker, 602 So.2d 1164, 1167 (Miss.1992), which states that under this Court's standard of review, a chancellor's findings should be upheld unless it can be shown that his decision is manifestly erroneous.

*1281 STATUTORY AND CASE LAW
¶ 16. Our statute dealing with adverse possession is Mississippi Code Annotated Section 15-1-13 (1972) which, in pertinent part, states:
Ten years' actual possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have been commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title....
In Rice v. Pritchard, 611 So.2d 869, 871 (Miss.1992), our supreme court developed a six-part test to determine whether adverse possession has occurred pursuant to the statute, as follows:
From this statute, a six-element test has been extracted. In a recent decision, Thornhill v. Caroline Hunt Trust Estate, 594 So.2d 1150, 1152-1153 (Miss.1992), this court stated that for possession to be adverse it must be (1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful. See also West v. Brewer, 579 So.2d 1261, 1262 (Miss.1991) (quoting Stallings v. Bailey, 558 So.2d 858, 860 (Miss.1990)). The burden of proof is on the adverse possessor to show by clear and convincing evidence that each element is met. Thornhill, 594 So.2d at 1153; West, 579 So.2d at 1262; Stallings, 558 So.2d at 860; Martin v. Simmons, 571 So.2d 254, 257 (Miss.1990).
(emphasis added). To take this analysis to completion, we note that our supreme court in Johnson v. Black, 469 So.2d 88, 90-91 (Miss.1985) instructed:
The principle is also accepted that both the quality and quantity of possessory acts necessary to establish a claim of adverse possession may vary with the characteristics of the land. Adverse possession of "wild" or unimproved lands may be established by evidence of acts that would be wholly insufficient in the case of improved or developed lands. Kayser v. Dixon, 309 So.2d 526, 529 (Miss.1975); McCaughn v. Young, 85 Miss. 277, 292-293, 37 So. 839, 842 (1905). The question in the end is whether the possessory acts relied upon by the would be adverse possessor are sufficient to fly his flag over the lands and to put the record title holder upon notice that the lands are held under an adverse claim of ownership. Snowden & McSweeny Co. v. Hanley, 195 Miss. 682, 687, 16 So.2d 24, 25 (1943).
Thus, according to Johnson, the fact finder must analyze both the alleged acts of adverse possession and the qualities or the characteristics of those acts which enable them to put a title holder on notice that a claim, adverse to his own, is being made against his property. Thus, although an act may demonstrate possession, it may also fail to provide sufficient notice to alert a title holder to an adverse claim upon his land.
¶ 17. Relying upon Johnson, the supreme court in Rawls v. Parker, 602 So.2d 1164, 1168 (Miss.1992) stated:
Under Johnson, the pertinent issue would be: Were the garden and storage enough to put Rawls on notice of an adverse claimant? Rawls argues that it is common knowledge that in rural areas people regularly dump refuse on other peoples property, and what Parker fondly regards as storage, most would consider "dumping." Although arguably the garden and storage may be evidence of possession, the fact remains that as soon as Parker erected a fence, Rawls took action.
In Rawls, the acts of mowing, gardening, and storage of junk cars may have been evidence of possession but when a fence was erected, the quality of that act of adverse possession caused Rawls to take action.
¶ 18. Walker asserts that his "flag" began to fly on the property in question when West, his predecessor in interest, began maintaining a garden on the north edge of the ditch in 1967 and continued to garden there until 1992. Walker further maintains that West also demonstrated possession by mowing and otherwise maintaining the property in question until 1994, when he sold it to Walker. When Walker purchased West's property, he testified that West told him the *1282 property purchased by him went to the center of the ditch. Walker's acts of possession were that (1) he personally stored junk cars on this property; (2) he occasionally parked two eighteen wheelers on the property; (3) he mowed the property to the north edge of the ditch; and (4) one of his tenant's worked a garden on the north edge of the ditch. Walker also points to a discussion, between himself and Murphree where Murphree suggested that they both could be liable for dumping waste oil into the ditch because "they both owned it." Murphree denies having this conversation with Walker. Regardless of the quantity of these alleged acts of possession by West and Walker, it remains undisputed that when Walker's houses were placed upon the north side of the ditch, Murphree took immediate action which was very similar to the actions taken by Rawls when Parker erected the fence. See Rawls, 602 So.2d at 1168. The presence of the houses in the case sub judice was notice of such kind and quality that it placed Murphree on notice of Walker's claim to the property, and Murphree took action.
¶ 19. The chancery court's findings of fact correctly made an analysis of the quality of evidence presented at trial, as opposed to the mere quantity of the evidence. To that end, the chancellor stated that "[t]his Court finds that none of the Defendant's testimony offered sufficiently proves his claim of adverse possession" and that Walker's testimony regarding the "garden placed upon the land failed to elicit crucial details which might show scale, duration, or type of garden." (emphasis added). The chancellor also accurately observed "that at no time did the Defendant or his predecessor in title hold the property under a claim of ownership" and that "[t]he Defendant did not cause a survey to be conducted, and never claimed ownership until the instant action was filed against him." In this regard, it is noteworthy that Walker never filed a counterclaim seeking to establish his title to the disputed property pursuant to Mississippi Code Annotated Section 11-17-29 (1972) but merely set up adverse possession as an affirmative defense to Murphree's petition seeking injunctive relief to remove the houses in question.
¶ 20. Having reviewed the record and being mindful of the standard of review which we must follow, we find that the chancery court's decision rejecting Walker's claim of adverse possession was based upon substantial evidence and that his decision does not constitute manifest error.

CROSS-APPEAL

DID THE TRIAL COURT ERR IN FAILING TO AWARD DAMAGES AND ATTORNEY'S FEES TO APPELLEE/CROSS-APPELLANT, MURPHREE?
¶ 21. In its findings of fact, conclusions of law, and judgment of the court, the chancery court found that Walker committed a trespass upon Murphree's land, but the court failed to address what compensation, if any, Murphree should be awarded as a result of the trespass. Moreover, the chancellor made no finding that the plaintiff or his property suffered any damage as a result of Walker's trespass, and thus made no finding that the plaintiff was entitled to claim compensation for punitive damages, attorney's fees, or survey costs.

STANDARD OF REVIEW
¶ 22. As recognized above, this Court's standard for reviewing a chancellor's decision on this issue is well settled and also requires the application of the substantial evidence/manifest error test to decisions of the trial court on factual issues. Rawls v. Parker, 602 So.2d 1164, 1167 (Miss.1992); Johnson v. Black, 469 So.2d 88, 90 (Miss.1985).

DAMAGES
¶ 23. In Chevron Oil Co. v. Snellgrove, 253 Miss. 356, 363, 175 So.2d 471, 474 (1965), the supreme court noted that Mississippi law has recognized that "[i]t is a principle of universal application that every trespass gives the landowner a right to at least nominal damages." However in order to recover more than nominal damages, actual damages must be shown. Id. at 364, 175 So.2d 471 (citing Clark v. Hart, 3 So. 33 (Miss.1887)). In regard to damages to property, the supreme court stated in R & S *1283 Development, Inc. v. Wilson, 534 So.2d 1008, 1012-13 (Miss.1988) as follows:
As a general rule, the measure of damages for injury to land is the difference in value of the land before and after the trespass. However, this rule applies only in cases of permanent injury to realty. Chevron Oil Co. v. Snellgrove, 253 Miss. 356, 364, 175 So.2d 471, 474 (1965); and Sun Oil Co. v. Nunnery, 251 Miss. 631, 646, 170 So.2d 24, 31 (1964). Where, as in this case, the injury to the subject land "is temporary and subject to restoration, the proper measure of damages is the cost of restoration." Buras v. Shell Oil Co., 666 F.Supp. 919, 923 (S.D.Miss.1987), citing Sun Oil Co. v. Nunnery, 251 Miss. 631, 170 So.2d 24, 31-32 (1964) (other citations omitted).
¶ 24. Murphree presented no evidence that Walker's trespass caused any injury, either permanent or temporary, to the land in dispute. In addition, Murphree presented no evidence which would indicate that he sustained any injury because of his inability to use the land. Moreover, the testimony presented by Murphree, Walker, and West indicated that Murphree had never or rarely utilized the north side of the ditch in question.
¶ 25. The decision of "whether punitive damages should be awarded depends largely upon the particular circumstances of the case." Aqua-Culture Techs., Ltd. v. Holly, 677 So.2d 171, 184 (Miss.1996). Punitive damages may be awarded as punishment for trespass where the proof shows the trespass was willful, grossly negligent or wanton. Seismic Petroleum Servs., Inc. v. Ryan, 450 So.2d 437, 440 (Miss.1984). The chancery court made no findings that Walker's trespass was either willful, grossly negligent, or wanton. We recognize that under Mississippi law "attorney fees may be awarded in cases in which the awarding of punitive damages is proper" and that the "awarding of punitive damages is not a prerequisite for the awarding of attorney fees." Aqua-Culture Techs., Ltd., 677 So.2d at 185.
¶ 26. However, in this case the chancellor made no finding that punitive damages or an award of attorney's fees were warranted. Being mindful of the standard of review which we must follow, we find that the chancellor's failure to grant punitive damages, attorney's fees, or surveying costs was not manifest error. Nonetheless, every trespass gives the wronged landowner a right to at least nominal damages. Chevron Oil Co. v. Snellgrove, 253 Miss. 356, 175 So.2d 471 (1965). We therefore acquiesce to stare decisis and remand this issue to the chancery court for the sole determination of the nominal damages due to Murphree.
¶ 27. THE JUDGMENT OF THE CHANCERY COURT OF CALHOUN COUNTY IS AFFIRMED ON DIRECT APPEAL AND AFFIRMED IN PART AND REVERSED AND REMANDED IN PART ON CROSS-APPEAL. ALL COSTS OF THIS APPEAL ARE TAXED EQUALLY TO THE APPELLANT AND APPELLEE.
BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, HINKEBEIN, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.