910 So.2d 1241 (2005)
Tom ASKEW, Appellant,
v.
John REED and T & T Logging, Inc., Appellees.
No. 2004-CA-01147-COA.
Court of Appeals of Mississippi.
September 6, 2005.
*1242 William E. Spell, Clinton, attorney for appellant.
Edward P. Lobrano, Mel J. Breeden, Jackson, attorneys for appellee.
Before LEE, P.J., GRIFFIS and ISHEE, JJ.
LEE, P.J., for the Court.

PROCEDURAL HISTORY
¶ 1. This case arises from a land dispute in Hinds County, involving three parties: Tom Askew, John Reed, and T & T Logging (T & T). In 2002, Tom Askew filed a complaint to enforce ownership of land against Reed and T & T. In response, Reed filed a counterclaim alleging abuse of process and that Askew's claim was "non-meritorious."
¶ 2. After the trial on the matter, the chancellor found that Askew failed to show that he had successfully acquired the land by adverse possession. The chancellor further found that Reed's counterclaim lacked merit. Reed does not seek review of his counterclaim. It is from the adverse possession ruling that Askew now appeals to this Court. Finding no error, we affirm.

FACTS
¶ 3. In 1951, Tom Askew was deeded a tract of land in Hinds County. Askew's land is situated to the immediate west and south of the disputed property. John Reed owns a tract of land in Hinds County which is immediately east of the disputed property. T & T also owns a tract of land in Hinds County, and its property is also immediately east of the disputed property. The disputed land is 5.65 acres on the west side of Reed's property and 5.42 acres on the west side of T & T's property.
*1243 ¶ 4. In 1952, Askew instructed his brother, Knox Askew, to build a fence along what Askew perceived as the boundary to his land. Knox built the fence, and Askew used the land to graze cattle from 1952 until 1958. After 1958, Askew no longer grazed cattle on the land, the fence fell into disrepair, and Askew began to use the land for growing timber. In actuality, the fence did not correspond with the correct boundary line and encroached upon the land which is now owned by Reed and T & T.
¶ 5. From 1964 until 1976, Sam and Bessie Richardson owned the disputed property. Sam and Bessie are the parents of Thomas Richardson, the owner and sole shareholder of T & T. In 1976, the land was sold by the Richardsons to Loyd Williams, from Williams to Sidney and Mildred Holcombe, and from the Holcombes to John M. Reed and Mary Reed. Reed built his house close to the disputed property and has lived on his tract since 1976. In 1998 T & T purchased part of the disputed property from Reed.
¶ 6. The disputed property is hilly, heavily wooded, and filled with gullies and "mountains." At various times the disputed property was either wooded or cleared, the significance of which will be addressed later in this opinion.
¶ 7. On appeal, Askew argues the following four assignments of error, which we quote verbatim: (1) the court erred in its finding and conclusion that Askew could not have begun to adversely possess the disputed property until 1998, the point at which Askew learned that the fence was not located on the eastern boundary of his property; (2) the court erred in its finding and conclusion that the fact that Askew never paid taxes on the disputed property precluded an adverse possession claim; (3) the court erred in the finding and conclusion that adverse possession cannot begin with a mistake that results in placing a fence outside the property line described in the adverse possessor's deed; (4) the court erred in the finding and conclusion that Askew appears to rely on his claim of adverse possession almost exclusively on the existence of the remnant of the old fence.

STANDARD OF REVIEW
¶ 8. Our standard of review of the decision of the chancellor in the case sub judice is quite limited, for we do not consider the evidence de novo; we apply the familiar substantial evidence/manifest error test. Johnson v. Black, 469 So.2d 88, 90 (Miss.1985) (collecting authorities). "Suffice it to say that we have no authority to grant appellant any relief if there be substantial credible evidence in the record undergirding the determinative findings of fact made in the chancery court." Id.
I. DID THE TRIAL COURT ERR IN FINDING THAT ASKEW'S ADVERSE POSSESSION BEGAN IN 1998?
III. DID THE TRIAL COURT ERR IN FINDING THAT ADVERSE POSSESSION CANNOT BEGIN WITH THE ERRONEOUS PLACEMENT OF A FENCE?
¶ 9. The chancellor determined that "[Askew] could not have begun to adversely possess the disputed property until 1998, the point at which he learned that the fence was not located on the eastern boundary line of his property." Issues I. and III. can be adequately addressed by answering the following question: "Must a claimant intend to take the land of another to commence the statutory ten year period for adverse possession?" This question is most concisely answered in Metcalfe v. McCutchen, 60 Miss. 145 (Miss.1882). In Metcalfe, the plaintiff owned land to the west, while the defendant owned land on *1244 the east. The two parcels adjoined, and the defendant mistakenly placed his fence on property belonging to the plaintiff. The defendant believed that the land on which his fence was situated was, in fact, his property. In finding that the defendant adversely possessed the land for ten years, our supreme court determined that the fact that the claim arose from mistake is not pertinent. The court opined:
[W]e adopt the views of those courts which hold that that [sic] possession is adverse in which the holder claims, and intends to claim title, without regard to the fact that the possession and claim is held and made under an honest, but mistaken, belief that the land is within the calls of his deed. It is the fact that possession is held, and that title is claimed, which makes it adverse possession, or claim, or both, though they may have resulted from a mistake; but it is their existence and not their cause that the law considers, and existing, they constitute adverse possession.
Metcalfe, 60 Miss. at 154. Thus, it is long-standing law in Mississippi that a claimant need not intend to take property from another to begin the process of adverse possession.
¶ 10. The chancellor erred in his finding that Askew's adverse possession did not begin until Askew realized that his fence was located upon the land of another.
II. DID THE TRIAL COURT ERR IN ITS CONCLUSION REGARDING ASKEW'S PAYMENT OF TAXES ON THE DISPUTED PROPERTY?
IV. DID THE TRIAL COURT ERR IN CONCLUDING THAT ASKEW'S CLAIM RESTED ALMOST EXCLUSIVELY ON THE REMNANTS OF THE OLD FENCE?
¶ 11. Assignments II. and IV. regard the chancellor's finding of facts; therefore, we will address the two errors together. This Court will not disturb a chancellor's findings of fact unless clearly erroneous. Gillespie v. Kelly, 809 So.2d 702, 705(¶ 9) (Miss. Ct.App.2001). Adverse possession is statutory in Mississippi. Mississippi Code Annotated Section 15-1-13 (Rev.2003) provides in pertinent part as follows:
(1) Ten (10) years' actual adverse possession by any person claiming to be the owner by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title, saving to persons under the disability of minority or unsoundness of mind the right to sue within ten (10) years after the removal of such disability, as provided in Section 15-1-7. However, the saving in favor of persons under disability of unsoundness of mind shall never extend longer than thirty-one (31) years.
¶ 12. To establish a claim of adverse possession, Askew must show that his possession was: "(1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful." West v. Brewer, 579 So.2d 1261, 1262 (Miss.1991) (quoting Stallings v. Bailey, 558 So.2d 858, 860 (Miss.1990)). The claimant must prove these elements by clear and convincing evidence. West, 579 So.2d at 1262. The possessory acts relied upon by the would-be adverse possessor must be sufficient "to fly his flag over the lands and to put the record title holder upon notice that the lands are held under an adverse claim of ownership." Johnson, 469 So.2d at 91. Under Johnson, "the fact finder must analyze *1245 both the alleged acts of adverse possession and the qualities or the characteristics of those acts which enable them to put a title holder on notice that a claim, adverse to his own, is being made against his property." Walker v. Murphree, 722 So.2d 1277, 1281(¶ 16) (Miss.Ct.App.1998).
¶ 13. The chancellor found that Askew failed to prove the six elements of adverse possession by clear and convincing evidence. In his brief, Askew argues that his brother built the fence at his request and that the fence was built along a line identified by Samuel Richardson as the boundary line. In his opinion the chancellor found that Askew's claim centered around the fence that was built in 1952.
¶ 14. From the record before this Court it is clear that in 1952 Askew's brother constructed a fence along what he and Askew thought was the property line, and it is clear that Askew grazed cattle on the land from 1952 until 1958. Askew testified that from 1957 until 1963, he occasionally hunted on the land, did not maintain the fence, and visited the property occasionally while the timber grew. Askew also testified that he rented the land to some hunters in 1988.
¶ 15. Knox Askew testified that he installed the fence along a line which he thought was the boundary of his brother's property.
¶ 16. Thomas Richardson testified that he bought his land in 1998, but he recalls hunting and playing on the disputed property as a child. He testified that his family planted corn on the disputed property, and that occasionally cows would cross the creek and come into the corn, at which point he would chase the cows back across the creek. Richardson testified that Askew offered to purchase the disputed property in 1998. He recalls routing hunters from the land beginning in 1988. He testified that he paid taxes on the property, and that he could only recall seeing Askew about four times "since he was old enough to know."
¶ 17. M.C. Richardson, Thomas Richardson's brother, testified that he would play on the land as a child and that he hunted on the land as an adult, all without interruption from Askew or anyone else.
¶ 18. Reed testified that he bought the land from Sammy Richardson in 1976. He built his house about sixty feet from the disputed property, where he has lived continuously from 1976. Reed testified that he has not see Askew since the 1970s. Reed testified that Richardson's family had once grown corn on the disputed property, but because the Richardsons had let the land grow over, Reed "put a dozer" to the land to clear it. Reed testified that he allows neighbors to hunt on the land, that he fends off poachers, especially during deer season, and that he leases the land to the Highway Patrol's Hunting and Fishing Club.
¶ 19. We agree with the chancellor that Askew failed to show by clear and convincing evidence that he adversely possessed the land. Appearing occasionally to inspect the land and allowing a fence to fall into disrepair are insufficient to make clear that Askew was attempting "to fly his flag over the lands and to put the record title holder upon notice that the lands are held under an adverse claim of ownership." Johnson, 469 So.2d at 91. Furthermore, assuming, arguendo, that the fence and cattle are adequate to establish a claim of adverse possession, Askew only showed that he possessed the land in that manner from 1952 until 1958, four years shy of the statutory requirement. Askew did not show by clear and convincing evidence that *1246 for the remaining time his possession was adequate to constitute adverse possession. We find no error here.
¶ 20. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES, P.J., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.