GRANTHAM, et ux. *v.* MASONITE CORP.

Nov. 16, 1953

No. 38913        43 Adv. S. 8        67 So. 2d 727

*Collins & Collins,* Laurel, for appellants.

*Buchanan & Montgomery, Welch, Gibbes & Butts,* Laurel; *S. S. Greeley,* Chicago, Illinois, for appellee.

Arrington, J.

Masonite Corporation filed its original bill on September 10, 1949, in the Chancery Court of the First

Judicial District of Jones County to cancel the claims of D. L. Grantham and his wife, Mrs. D. L. Grantham, to 280 acres of land as a cloud upon its title. The Granthams answered and claimed title by adverse possession to approximately 165 acres of the land, alleging that they had had that portion under fence since 1936, claiming the same as their own and occupying it exclusively, pleading Sec. 709, Miss. Code of 1942, in bar of the suit of Masonite Corporation. The Granthams made their answer a cross-bill and prayed for confirmation of their title.

The court, after a hearing, granted the prayer of Masonite Corporation's bill except as to 1.75 acres used by the Granthams as a hog pen.

The land in question was sold to the State in 1931 and had been patented out to one of the original owners by two patents, one issued in 1938 and the other on June 28, 1939. On August 22, 1939, Masonite Corporation acquired its title through grantees of the original owners. Masonite Corporation, therefore, holds the record title to the land in controversy. In 1935 and 1936, Grantham built a fence along the south boundary of the land and joined it on the west end with a fence of the railroad company extending along the west side of the land. The east end of the fence extended to the Bougehoma Creek. The creek could not be crossed by cattle and Grantham used the creek as the east boundary of the land. He built in conjunction with or at the instance of a man named Walters, an adjoining property owner on the north, a fence across the north side of the land extending eastwardly to the creek. Grantham admitted that he had no title to the land when he fenced it, but intended to use it until somebody put him off, and intended to resist being put off. After fencing the land, Grantham pastured from five to twenty head of cattle thereon, built a fish pond, planted some grass in places on the land, and from time to time cut and sold small quantities of logs therefrom.

In 1939, Masonite Corporation surveyed the land. Thereafter, from time to time it made other surveys and from time to time it put markers around the boundaries of the land and posted it, with its name appearing on the posted signs. Masonite Corporation also marked the trees by painting them along the boundary. Grantham admitted that he had knowledge of the entry upon the land by Masonite Corporation for the purpose of making the surveys, marking the lines, etc., and that he made no objection to their entering upon the lands for said purposes, and never advised them that he was claiming the land as his own.

To acquire land by adverse possession, the possession must not only continue for the statutory period, but it must be exclusive and hostile. In the case of Ball v. Martin, 63 So. 2d 833, the Court said: "In this case, Ball had no color of title. He could therefore claim only by reason of adverse possession, and to prevail, he must have had the intention 'to appropriate and use the land as his own to the exclusion of all others, irrespective of any semblance or shadow of actual title or right'."

The evidence does not disclose an intention on the part of Grantham to use the land to the exclusion of the record owner. It is not disputed that the record owner went upon the land at will for the purpose of exercising acts of ownership over same without objection from Grantham. "When it is clear that there is no intention to claim against the true owner, the possession will not be adverse, and however long continued will not bar his right of entry. Magee v. Magee, 37 Miss. 138.

The decree of the chancellor was warranted under the evidence, and should be affirmed.

Affirmed.

*McGehee, C. J.,* and *Lee, Holmes,* and *Ethridge, JJ.,* concur.