JOHNSTONE *v.* NAUSE

No. 40719          May 26, 1958          102 So. 2d 889

*E. C. Black,* Marks, for appellant.

*Stovall Lowrey,* Clarksdale, for appellee.

Kyle, J.

This case is before us on appeal by Mrs. Floy Johnstone, complainant in the court below, from a decree of the Chancery Court of Quitman County rendered in favor of C. L. Nause, defendant in the court below, in a suit involving a boundary line dispute.

The record shows that the appellant is the owner of the tract of land described as the W½ of SW¼ of Section 22, Township 28, Range 1 East; and that the appellee is the owner of the tract of land described as the S½ of Section 21, Township 28, Range 1 East, which lies immediately west of the appellant's 80-acre tract in the SW¼ of Section 22. Both tracts of land are bounded on the north by State Highway No. 6. The strip of land in controversy is a strip of land approximately 175 feet in width, extending from State Highway No. 6 southwardly one-half mile to the south boundary line of the two sections. The appellant acquired title to the above mentioned W½ of the SW¼ of Section 22 and also the W½ of the NW¼ of said Section 22 by forfeited tax land patent dated December 10, 1936, and by quitclaim deed from the Panola-Quitman Drainage District dated April 3, 1941. The appellee acquired title to the above mentioned S½ of Section 21 on December 8, 1936, by quitclaim deed from Panola-Quitman Drainage District, which had acquired title by forfeited tax land patent from the state dated November 5, 1936. The appellee was a minor about ten years of age at the time the land in Section 21 was purchased for him by his father, John L. Nause; and John L. Nause managed and controlled the land until a short time before his death about 1947. The appellant's land was purchased for her by her father, George D. Thomas, who owned the land lying immediately east of the appellant's two 80-acre tracts.

John L. Nause entered into possession of the land in Section 21 immediately after his purchase of the land and cleared a part of the land and built tenant houses

thereon; and sometime during the year 1937 John L. Nause decided to erect a fence along the east side of the land; but before undertaking to build the fence he employed Paul Claxon, a surveyor, to run the line. Claxon started at a stone marker at the southeast corner of Section 16, which seems to have been recognized by landowners in that area as an established corner; and Claxon ran the line south one mile to the southeast corner of Section 21, but found no corner markers at that corner. After the line had been run John L. Nause erected a fence along or near the line, and enclosed several acres of his land lying west of the fence in a pasture for mules and hogs. George D Thomas also cleared about 20 acres of the land which his daughter owned in the W½ of the W½ of Section 22 The land through which the division line had been run, however, was low and swampy, and none of the land lying immediately adjacent to the division line was cleared until sometime after 1952. In 1938 and 1939 the State Highway Department obtained deeds from Mrs. Flo Johnstone and John L. Nause for a right of way for the construction of State Highway No. 6 across the north side of the W½ of the SW¼ of Section 22, and the north side of the S½ of Section 21. John L. Nause qualified as guardian for his minor son and executed the deed of conveyance of the right of way for his minor son under authority of a decree of the chancery court for the sum of $1,000. The amount of land included in the conveyance was 18.4 acres. The description of the right of way conveyed in the deed contains references to station numbers, as shown on the plans for the highway on file in the office of the State Highway Department of Jackson; and by reference to the station numbers mentioned in the deed it appears that the division line as located by Claxon was adopted by the State Highway Department in the preparation of the deed.

After the death of John L. Nause in 1947, C. L. Nause, who had attained his majority on October 2, 1947, took

over the management of his own land; and in 1952 C. L. Nause crossed over the line run by Claxon in 1937, and began to assert claim to a strip of land lying east of the line established by the Claxon survey of 1937. Claxon ran another line for Nause in 1954, and as a result of that survey located the southeast corner of Section 21 at a point 3 or 4 chains east of the corner established by the 1937 survey. The appellee then employed W. R. Wallis who had run the line between Sections 21 and 22 for George Thomas in 1941, to run the line again, and Wallis made another survey which conformed to the survey made by Claxon in 1937, and the survey made by Wallis himself in 1941. Nause, however, continued to cut the timber on the disputed area; and the appellant filed her original bill of complaint in this cause on February 18, 1955.

The complainant filed an amended bill on August 24, 1955, and in her amended bill the complainant alleged that the boundary line between Sections 21 and 22 run out and established by Paul Claxon in 1937 was the true and correct boundary line between the two sections; that the line had been run out and established pursuant to a valid agreement between John L. Nause and the complaint for the purpose of having the same correctly established as a division line between the lands owned by the complainant and the defendant; that John L. Nause had erected a fence along the line soon thereafter; and that the defendant had recognized and acquiesced in the line as thus established for a period of several years after attaining his majority. The complainant therefore asked in her bill that the court by proper decree establish the line as thus run out and established in 1937, as the true and correct division line between the two tracts of land, and that the defendant's claim to the strip of land lying east of said line be cancelled. The complainant also asked for a personal decree against the defendant for $495 actual damages for the wrongful cutting of timber

on the complainant's land and also punitive damages in the sum of $500 for the willful trespasses committed by the defendant; and the complainant asked for general relief.

The defendant in his answer denied the material allegations of the amended bill of complaint. The defendant denied specifically that John L. Nause and the complainant had agreed to have the line run and established as a division line in 1937; and the defendant denied that the fence erected by John L. Nause had ever been recognized as a boundary line between the two tracts of land. The defendant averred in his answer that he was at the time of the alleged agreement a minor, and that neither John L. Nause nor any other person was authorized to make any agreements on his behalf. The defendant admitted that in 1951 or 1952 he had begun to clear his land on the extreme east end, and that he had caused a survey to be made to establish the true location of the division line; but the defendant denied that he had cut any timber on the complainant's land; and the defendant asked that the complainant's bill be dismissed.

The chancellor, after hearing the testimony, found that the complainant had failed to establish her claim that the line run out in 1937 was a true and correct division line between the two tracts of land, and the chancellor entered a decree dismissing the bill of complaint with prejudice.

The main point argued by the appellant's attorneys as ground for reversal of the decree of the lower court is that the court erred in holding that the evidence was insufficient to establish the line which had been surveyed by Paul Claxon in 1937 and by W. R. Wallis in 1941 as the true and correct division line between the land owned by the appellant and the land owned by the appellee.

It is therefore necessary that we give a brief summary of the testimony of the witnesses who testified on behalf of the respective parties.

George D. Thomas, the father of the appellant, whose deposition was taken by agreement of the parties, testified that soon after John L. Nause purchased the land in Section 21, taking title to the same in the name of his son, John L. Nause, asked him to show him the line in the S½ of Section 21, and the land owned by the appellant, Mrs. Johnstone, in Section 22. Thomas told Nause that he could not show him the line, and the best thing for him to do was to get a surveyor to run the line. Nause employed Paul Claxon to run the line, and Thomas paid two of the helpers. Claxon ran the line, and Nause then built a fence a foot or two over on his own side of the line as a part of an enclosure for a pasture where he kept his mules and hogs. The fence was a straight fence, except in one place where there was a big tree; and the fence remained there until a few years before the date of the trial. Thomas stated that he later employed W. R. Wallis to run the line between Sections 21 and 22 for the purpose of gettng an accurate measurement of all of his own land and the land owned by his daughter, Mrs. Johnstone; that Wallis started at the northwest corner of Mrs. Johnstone's land in Section 22 where there was a stone marker; and Wallace ran the line between Sections 21 and 22 for him at that time. Thomas stated that Wallis had run the line again for Mrs. Johnstone about 1954, after C. L. Nause had begun to assert a claim to the strip of land in controversy.

W. R. Wallis, who was the chief witness offered on behalf of the complainant, testified that he had been engaged in the practice of civil engineering in Quitman County since 1914 or 1915; and that he had run the line between the S½ of Section 21 and the S½ of Section 22, in Township 28, Range 1 East, on two separate occasions, first in 1941, and again in 1955. He ran the line from the northwest corner of Section 22 down to the highway in April 1941, and he then ran the line southwardly from the highway to the south boundary line of the Section

in July 1941. His starting point was the southeast corner of Section 16, same being the northwest corner of Section 22. He stated that he had run the lines of Section 16 in 1915 at the request of the board of supervisors, and the stone marker at the southeast corner of Section 16 was pointed out to him as a recognized corner at that time, and he found stone markers at each corner of the section. He did not verify the location of the stone marker at the southeast corner of the section at that time. But several years later he was employed to run the line between Sections 15 and 22 for E. T. Kelsey and George Thomas, who were interested in the division line between those two sections; and he started at the southeast corner of Section 16 and measured eastwardly along the section line 43 chains to the Chickasaw boundary line, which was the distance called for in the field notes of the government survey. Mr. Kelsey and Mr. Thomas both recognized the point that he reached as a point on the Chickasaw boundary line.

Wallis stated that he ran the line between the $S\frac{1}{2}$ of Section 21 and the $S\frac{1}{2}$ of Section 22 again in February 1955. He started at that time at a point on the south line of the highway right of way due south of a stake on the north side of the highway which he had put there in 1941; and he ran southwardly to the south line of the section. When he got to the south end of the line he found a little depression on the ground which he was told was the point where there had been at one time a stone marker. Wallis identified a plat which he had made, and which was offered in evidence, showing the section line as run out by him in 1941 and 1955, and also the line claimed by Nause as the east boundary line of his land, which was located about 161 or 162 feet east of Wallis' line. Wallis stated that he found a U. S. Engineering department "bench marker" near the south end of the line which Nause thought was a government corner marker, and there was a tree marked with an "X" about 15 feet from the bench

marker; but the tree mark appeared to be only about 35 or 40 years old, and a mark placed there by the original surveyor would have been over 100 years old. Wallis stated that when he went back to run the section line in 1955 the timber on the strip of land between the line which he had run in 1941 and the line which Nause claimed as a division line had been cut.

Wallis stated that in his opinion the line running south from the southeast corner of Section 16, as shown on the plat which he had prepared, had been correctly located according to the field notes.

Wallis was questioned about the location of a gravel road running along the west side of Section 21; and Wallis stated that he had run the south line of Section 20 several years before the trial; that he started at the southwest corner of Section 19 which was a corner recognized by the landowners in that area; and that he had run the line two miles eastwardly to a stone which was supposed to mark the southwest corner of Section 21. He found the stone located 100 feet too far east, and in his opinion, if the gravel road along the west side of Section 21 was located according to the stone marker which he found at that time, it was 100 feet east of the section line between Sections 20 and 21.

Wallis' testimony was corroborated in many of its details by the testimony of other witnesses who testified for the complainant.

E. T. Kelsey testified that Wallis had made a survey of some land that he was buying from Mr. Thomas in 1952, and that Wallis started at the southeast corner of Section 16 and ran the line eastwardly to the Chickasaw boundary line. Kelsey stated that he knew where the Chickasaw boundary line was supposed to be, and that he pointed out that boundary line to Wallis at the time he made the survey. Carl Jones testified that the stones at the corners of Section 16 were in the same places they were in when he first became acquainted with that area

in 1918. Jones stated that he pointed out the corner of Section 16 to Claxon in 1937, when Claxon ran the line between Sections 21 and 22 for John L. Nause, and that Claxon ran the line from that corner. Jones stated that he had seen a stone marker at the southeast corner of Section 21 when Dodson cut the timber on the land in that immediate vicinity in 1927, but someone had taken the stone up later. He stated that the hole was still there, however, when he helped Wallis run the line in 1955.

Paul Claxon was the only witness who testified for the defendant. Claxon testified that he had run the line between the S½ of Section 21 and the SW¼ of Section 22 for John L. Nause in 1937, soon after Nause acquired title to the land for his son. The land was all in the woods at that time. He started at the southeast corner of Section 16 and ran the line south one mile. He made no survey to determine whether the corner from which he started was correct. He did not attempt to tie it in with any other corner. He found no marker of any kind at the southeast corner of Section 21 at that time. He stated that it was not until recently, in April or May, 1954, that he had found a concrete post at or near the southeast corner of Section 21. The stone marker which he found at that time was located 3 or 4 chains east of the point which he had reached on the south line when he made his survey of the east line of Section 21 in 1937. The stone was "leaning up against something." He did not know who put the stone there. He did not recall that it had a section number on it. He did not try to verify the location of the stone from the east or the south; but he checked the distance from the point where he found the stone to the center of the gravel road running southwardly along the west line of Section 21, and he found that it lacked a few links of being a mile. Claxon stated that he had laid out the road along the west side of Section 21 for the county when the land was still in the woods, and he thought the road was on the section line.

He was asked how much difference there would be between a line running northwardly, according to the correct bearings, from the stone that he found in 1954 and the line that he had run southwardly from the corner of Section 16. He said that the distance between the two lines would be 176 feet.

On cross-examination Claxon admitted that he had purchased from the appellee in 1954 the timber on the land lying east of the Ashlog Bayou, including the strip of land involved in this controversy, and had sold the timber to Floyd Lumber Company for $550. He stated, however, that less than ten per cent of the timber that he had sold was on the strip of land in controversy. He admitted that, when he surveyed the line for C. L. Nause's father in 1937, Carl Jones went with him to the stone marker at the southeast corner of Section 16 to start his survey, and that when he got to the southeast corner of Section 21 he saw no stone marker of any kind. He admitted that when he did some work for George McKibben, who owned the land in Section 21 just across the highway from the Nause land, about 1952 or 1953, he started at the same stone marker at the southeast corner of Section 16, and came south to the highway, and that the east line of George McKibben's land was about 175 feet west of the east line of the strip of land that C. L. Nause had cleared south of the road at the time of the trial. Claxon stated that he was ''pretty sure'' the gravel road running along the east side of Section 21 was about the section line, but the county did not have the money to pay him for going out there and checking the lines and rerunning them. He was pressed for an answer to the question whether he had made any checks on the stone markers which he had used as guide posts in laying out the road for the purpose of determining whether they were in the right places; and his answer was, ''Well, during my lifetime there wasn't any sure way of checking it.''

██ ██ It must be conceded of course that the burden of proof in this case rested upon the complainant to establish the material allegations of her bill of complaint by a preponderance of the evidence. ██ ██ But we think the complainant's proof was sufficient to establish the material allegations of her bill by a preponderance of the evidence, and that the complainant was entitled to the relief prayed for.

██ ██ The testimony in this case shows that time and the timber cutters' axes had obliterated most of the witness trees which served as markers of the original government survey of the lands located in the Panola-Quitman Drainage District area referred to above; and there is no direct testimony in the record to show the location of any other monuments or markers of the original survey. But where the monuments of a survey have disappeared evidence of common reputation as to the location of the boundaries and corners is admissible. 8 Am. Jur., Boundaries, Par. 95, page 813, and cases cited. See also Nixon v. Porter, 34 Miss. 697; Thoen v. Roche, 57 Minn. 125, 58 N. W. 686, 47 Am. St. Rep. 600; Smith v. Nowells, 2 Litt. 159, 12 Ky. 159; Hail v. Haynes, 312 Ky. 357, 227 S. W. 2d 918.

In Buckwalter Lumber Co. v. Wright, 159 Miss. 470, 132 So. 443, the Court said: "* * * when a surveyor is called upon to establish a land line between coterminous owners, the surveyor should begin at an established government corner called for by the field notes and find the evidences or some of them sufficient to show that it was a correct corner, and he should then reestablish the line and should find that at the other end of the line is a recognized government corner, or one reestablished by another surveyor, or one that is so well established and recognized by all persons in the community that there can be no doubt of its correctness."

The line which the appellant in the case that we have here asked that the court establish as the correct division

line between the land owned by the appellant and the land owned by the appellee was the line which had been run out and established by Paul Claxon, at the instance and request of the appellee's father in 1937, and which was later verified by the two surveys made by W. R. Wallis in 1941 and 1955. Each of the surveyors testified that he had used as a starting point in making his survey the stone marker at the southeast corner of Section 16. Wallis testified that the stone marker was there when he ran the lines of Section 16 for the board of supervisors in 1915. Carl Jones testified that the marker was there in 1918, when he began to hunt squirrels and coons in that area, and that the marker was still in the same place at the time of the trial. George D. Thomas, who had owned land in Section 22 since 1925, testified that the stone marker was there in 1928. It is clear from the testimony of all of the witnesses that the stone marker at the southeast corner of Section 16 was an established corner, generally recognized as such by the surveyors and landowners in that area for a long period of time, and according to Wallis' testimony it tied in with the Chickasaw boundary line at a point 43 chains east of the southeast corner of said section.

No attempt was made by the appellee to show that the stone marker at the southeast corner of Section 16 was improperly located, or that it did not check properly with the Chickasaw boundary line, or with established section corners located east or south of the division line as located by the above mentioned surveyors. The only testimony offered by the appellee to discredit the division line established by Claxon in 1937 was the testimony of Claxon himself to the effect that he had found sometime during the year 1954 an unmarked concrete post at a point 3 or 4 chains east of the southeast corner of Section 21, as shown by the 1937 survey, and that he had measured the distance from that point to the center of the gravel road on the west side of Section 21, and had found that the distance lacked a few links of being one

mile. Claxon admitted, however, as stated above, that he had made no attempt at any time to determine with accuracy the true location of the west line of Section 21.

We think that the chancellor was manifestly wrong in his holding that the complainant had failed to establish her claim that the line run out and established by Claxon in 1937 and by Wallis in 1941 and 1955 was the true division line between the land owned by the appellant and the land owned by the appellee.

For the reasons stated above the decree of the lower court is reversed and the cause is remanded, with instructions that a decree be entered establishing the division line between the appellant's land in the S½ of the SW¼ of Section 22 and the appellee's land in the S½ of Section 21, according to the survey made by Claxon in 1937 and by Wallis in 1941 and 1955, and that the chancellor hear proof as to the value of the timber cut and removed by the appellee from the strip of land in controversy and award damages to the appellant in such amount as she may be entitled to recover for the wrongful cutting of the timber.

Reversed and remanded.

*McGehee, C. J.,* and *Hall, Holmes* and *Gillespie, JJ.,* concur.