602 So.2d 1164 (1992)
Geraldine RAWLS
v.
William PARKER.
No. 90-CA-0099.
Supreme Court of Mississippi.
June 3, 1992.
*1165 Thomas J. Lowe, Jr., Jackson, for appellant.
Christopher A. Tabb, Brandon, for appellee.
Before DAN M. LEE, P.J., and BANKS and McRAE, JJ.
McRAE, Justice, for the Court:
Appellant Geraldine Rawls filed a complaint in the Chancery Court of Rankin County on September 13, 1988, seeking injunctive relief and confirmation of title. She contended that William Parker, who resided directly north of her land, had encroached upon the northern edge of her property by erecting a fence, planting a garden, and dumping various items of refuse. Parker maintained that the fence, the garden, and the trash all lie within his own boundaries. Alternatively, Parker asserted that he had obtained title to the disputed strip of land by adverse possession. The chancellor found for the defendant. On appeal, Rawls assigns the following as error:
I. The chancellor erred in finding that Parker had met the burden of proof required for establishing a claim of adverse possession.
II. The chancellor's adoption of Exhibit D-2 as the correct survey was against the overwhelming weight of the evidence.
We affirm the learned chancellor's decision, although we find his reasoning in part erroneous.

FACTS
Appellant Rawls holds title to the following tract of land:
A certain parcel of land situated in the NE 1/4 of the SW 1/4 of Section 6, Township 3 North, Range 5 East, Rankin County, Mississippi and being more particularly being described as follows:
Commencing at the Southeast corner of the Southwest 1/4 of the Northeast 1/4 of Section 6, Township 3 North, Range 5 East, run thence South 89 degrees 54 minutes 36 seconds west for a distance of 1350.04 feet to a point on the West side of Fletcher Road and the POINT OF BEGINNING of the herein described parcel of land; from said POINT OF BEGINNING run thence South 02 degrees 47 minutes 15 seconds West along the West side of said Fletcher road for a distance of 44.06 feet to a point on the North right of way of Mississippi State Highway No. 18; run thence along said North right of way the following bearings and distances, North 66 degrees 15 minutes 30 seconds West 13.23 feet; South 23 degrees 44 minutes 30 seconds West 40 feet; North 89 degrees 13 minutes 02 seconds West 340.57 feet; North 57 degrees 47 minutes 22 seconds West 131.12 feet; leaving said North right of way of Mississippi State Highway No. 18 run thence North 89 degrees 54 minutes 37 seconds East for a distance of 481.84 feet to the POINT OF BEGINNING containing 30094.32 square feet or 0.6909 acres more or less.
Parker holds record title to the following tract which is situated north of and adjacent to Rawls' land:
Beginning at the Southeast corner of the East half (E-1/2) of SE 1/4 of NW 1/4, Section 6, Township 3 North, Range 5 East, and run thence west 417 feet to a point, thence north 209 feet to a point thence east 417 feet to a point, thence south 209 feet to a point of beginning, and containing 2 acres, more or less, and all being in the East half (E-1/2) of SE 1/4 of NW 1/4, Section 6, Township 3 North, Range 5 East.
The legal descriptions of these two properties are not in dispute. The conflict, rather, arises over the actual position of the boundary line which separates them.
Two surveys were introduced at trial, one prepared by Homer Lang, a registered land surveyor and vice president of Reynolds Engineering Company in Jackson, and another prepared by Cecil Dawkins, a registered land surveyor employed with Rankin County Engineers. Rawls retained Mr. Lang and Parker retained Mr. Dawkins.
Mr. Lang defended his survey by explaining that after finding the Highway Department's *1166 right-of-way monuments,[1] he then tied the monuments to the Highway Department's survey and pushed the quarter section line west of the highway for approximately a quarter mile to the fence corners.
Mr. Lang also verified Rawls' property line by tying it to another corner, ascertained by a Mr. Hunt, who found an established or accepted quarter corner approximately half a mile to the east of the property. This corner was marked as a 12-inch pine post at the southeast corner of the SW 1/4 of the NE 1/4, Section 6, Township 3 North, Range 5 East, Rankin County, MS.
After verifying the two quarter corner sections, Mr. Lang verified the section as a whole and then tied that to a recognized government corner. He tied all of the traverses to the SW corner of Section 6 or what he believed to be the SW corner of Section 6. Additionally, Lang consulted records or field notes contained in the Secretary of State's Office in order to verify that corner. After testifying that Section 6 was not a true or perfect section, he then stated that based upon his experience, the survey was a true and accurate one of the property belonging to Geraldine Rawls as contained in her original deed, less and except what she conveyed to the State Highway Commission.
Dawkins previously had made surveys of Section 6, Township 3, Range 5 East, in both the north and south half for Rawls and for her father in the past. Mr. Dawkins testified that he began at a pine knot at a fence corner which is generally accepted in the area as being the SW corner of Section 6. This point of beginning had been pointed out to him by many of the old residents of that community as being the SW corner of Section 6. Physical evidence found, as to the location of Section 6, included the pine knot and an old fence running east and west. He also testified that between his survey and the survey that Rawls' surveyors did, that there was essentially about 55 feet in dispute.
According to Rawls, the property in question was a part of her old homeplace, and the line of possession had always been considered a barbed wire fence. An additional marker included a family store/cafe which aligned the fence. Neither the home, store nor barbed wire fence are in existence today.
Clarence Howard, Rawls' brother-in-law, testified that he remembered the store/cafe and that Parker's garden was south of the store's prior location. Mr. Ulos Anderson, first cousin to Rawls and brother-in-law to Parker, testified that when he conveyed his property in 1969, the fence was considered the property line and he did not intend to convey anything south of the fence. He also stated that the fence was more than ten feet north of the cafe.
Rev. William H. Parker testified for the defense and stated that Parker had been claiming down to that line for the past 25 years and that he had a number of appliances, a tractor, and other objects on the land. Although familiar with the new fence that Parker erected, he could not say whether the old store was north or south of it.
Ethel Parker, defendant's wife, testified that the half section line had divided the properties since the 1940s. Additionally, she stated that when the Highway Department bought the land from Rawls, the old fence was pushed away and the new fence was placed on the same line as the old boundary fence.
Mr. William Parker testified that the new fence was on the half section line and he had used this land since 1969. His use consisted of keeping a deep freezer, a washing machine, tractors and tractor parts on the land.
The chancellor rendered judgment on January 3, 1990, and opined as follows:
THE COURT: All right. In cases of this nature there is always conflicting testimony and disputes about property lines. As a matter of fact, this case *1167 would not be in this court if the parties, in fact, could agree upon a single line as being a property line. The Court is left in most all cases of this nature with believing the witnesses on one side as opposed to the witnesses on the other, whichever side that may be. In this case, the testimony has been, in some instances, diametrically opposed in favor of the plaintiff as opposed to the defendant and vice versa. The plaintiff acquired her title to the property from her brothers and sisters and, as the Court recalls from the testimony, there is no home site on that property at this time and the plaintiff does not reside upon the property which she claims.
To the contrary, the defendant, William Parker, resides upon the property adjoining that of plaintiff's to the north and has so resided for many years, at least by the testimony more than ten years. The variance in testimony, if any, is as to the time that the defendant has claimed the line where the fence now is directed as opposed to that of the plaintiff.
In cases of this nature, the Court does not always accuse the witnesses on one side of lying but rather of having a story by their testimony which matches their recollection. In other words, the witnesses for Ms. Rawls may, in fact, truly believe and recall that a line was at the point that they have testified about. I must say that the testimony of all the witnesses differed to some degree, even that between the defendant and his wife. Mr. Ulos Anderson, who testified in the first half of this hearing, testified that a fence was at one time in place a few feet from a store, shop, or cafe, which has now been removed.
The Court believes Mr. Anderson's testimony, but his testimony was in conflict with that of other witnesses. Mr. Anderson does not now live upon the property. The only person who now lives on the property, or person, are William Parker and his wife, Ethel. They testified that for many years, and at least for more than ten years, they have placed items of personal property, which I'll refer to as junk or stuff, on the land north of the fence now in dispute.
Although Mr. Parker may have enlarged his garden or even moved it, the Court believes that he has occupied his land by cultivating a garden and placing property thereon in open view of all parties who would be adversely affected thereby. The Court is strongly inclined to believe the testimony of William Parker and his wife as to the fence line as well as to the time involved to establish adverse possession and to establish a line which would settle the claim between the plaintiff and the defendant.
Because of the facts that the Court has set out and the testimony relied upon by the Court by the defendants, William Parker and his wife, the Court therefore finds that the relief of the defendant should be granted. It is therefore the opinion of the Court that the complaint of the plaintiff, Geraldine Rawls, should be dismissed and the relief prayed for by the defendant be granted and a decree should be drafted to conform with this opinion and present it to the Court for approval.

LAW
This Court's scope of review requires the application of the substantial evidence/manifest error test to questions of fact. Johnson v. Black, 469 So.2d 88, 90 (Miss. 1985). As this Court stated in Johnson:
It requires little familiarity with the institutional structure of our judicial system to know that this Court does not sit to redetermine questions of fact. Our scope of review is severely limited... . Suffice it to say that we have no authority to grant appellant any relief if there be substantial credible evidence in the record undergirding the determinative findings of fact made in the chancery court.
Johnson, 469 So.2d at 90 (citations omitted).
With questions of law, the scope of review is de novo. Planters Bank & *1168 Trust Company v. Sklar, 555 So.2d 1024, 1028 (Miss. 1990).

I. WHETHER THE CHANCELLOR ERRED IN FINDING THAT PARKER HAD MET THE BURDEN OF PROOF REQUIRED FOR ESTABLISHING A CLAIM OF ADVERSE POSSESSION?
The chancellor based his decision on Parker's testimony that for more than ten years, he had placed items of personal property on the land and that he occupied the land by cultivating a garden and placing said property in open view of all parties who would be adversely affected thereby. Additionally, the court seemed to imply that since the Parkers lived on the land then their testimony was more reliable than the others.
The time limitation on adverse possession is ten years under Miss. Code Ann. § 15-1-13 (1972), which states in pertinent part as follows:
Ten years' actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued shall vest in every actual occupant or possessor of such land a full and complete title.
Id.
Parker, as the alleged adverse possessor, had the burden to prove that his possession of the disputed property was (1) open, notorious and visible; (2) hostile; (3) under claim of ownership; (4) exclusive; (5) peaceful; (6) continuous; and (7) uninterrupted. Martin v. Simmons, 571 So.2d 254, 257 (Miss. 1990); Pieper v. Pontiff, 513 So.2d 591, 594 (Miss. 1987); Johnson v. Black, 469 So.2d 88, 90 (Miss. 1985); Gadd v. Stone, 459 So.2d 773, 774 (Miss. 1984).
Parker claimed that since 1969 he had stored "junk" consisting of a washing machine, tractor and tractor parts on the land in question. He claims that not only is the storage evidence of his open, notorious and visible possession, but it also proves he was in continuous and uninterrupted possession for well over ten years. Rev. William H. Parker's testimony corroborated Parker's when he testified that defendant Parker had claimed down to that line for the past 25 years and that he had a number of appliances, tractor, and other things on the land. Lurlean Boone, Rawls' sister, contradicted Parker's testimony when she testified that he had first placed his "junk" on the land around 1980 and perhaps as late as 1982. Ethel Parker testified that they had raised a garden on the land in question since 1974. This was rebutted only by Clarence Howard's testimony that at the time of trial Parker's garden was south of the store's prior location.
This Court addressed acts necessary to establish possession in Johnson, as follows:
[B]oth the quality and quantity of possessory acts necessary to establish a claim of adverse possession may vary with the characteristics of the land. Adverse possession of "wild" or unimproved lands may be established by evidence of acts that would be wholly insufficient in the case of improved or developed lands. The question in the end is whether the possessory acts relied upon by the would be adverse possessor are sufficient to fly his flag over the lands and to put the record title holder upon notice that the lands are held under an adverse claim of ownership.

Johnson, 469 So.2d at 90-91.
Under Johnson, the pertinent issue would be: Were the garden and storage enough to put Rawls on notice of an adverse claimant? Rawls argues that it is common knowledge that in rural areas people regularly dump refuse on other people's property, and what Parker fondly regards as storage, most would consider "dumping." Although arguably the garden and storage may be evidence of possession, the fact remains that as soon as Parker erected a fence, Rawls took action.
Parker testified that he and Rawls had a conversation, after she sold the State its right-of-way on March 15, 1979, during which he informed her that the established property line was where the fence had been located. He argues that this conversation *1169 is evidence of the elements of hostility and ownership needed to claim adversely. Corpus Juris Secundum describes evidence needed to prove hostility as follows:
Hostility of possession may be shown by evidence of the claimant's acts of ownership over the disputed property or by evidence of such improvements on other property as would indicate his intention to claim the property in dispute; and the fact that claimant took possession under a deed is also admissible to show the hostile character of his occupancy.

2A C.J.S. Adverse Possession § 283 (1972).
Parker holds title by virtue of warranty deed at Book 251, Page 510, in the records of the Chancery Clerk of Rankin County, MS.
Parker also argues that his conversation with Rawls indicates his exclusive use of the land. Corpus Juris Secundum states that in order to establish exclusive possession:
[T]here must be an intention to possess and hold land to the exclusion of, and in opposition to, the claims of all others, and the claimant's conduct must afford an unequivocal indication that he is exercising dominion of a sole owner.

2 C.J.S. Adverse Possession § 54 (1972).
This Court in Grantham v. Masonite Corp., 218 Miss. 745, 67 So.2d 727 (1953) addressed the exclusive and hostile elements and opined as follows:
To acquire land by adverse possession, the possession must not only continue for the statutory period, but it must be exclusive and hostile. In the case of Ball v. Martin, Miss., [sic] [217 Miss. 221] 63 So.2d 833, 836, the Court said: "In this case, Ball had no color of title. He could therefore claim only by reason of adverse possession, and to prevail, he must have had the intention `to appropriate and use the land as his own to the exclusion of all others, irrespective of any semblance or shadow of actual title or right.'"

Grantham, 218 Miss. at 749, 67 So.2d at 728.
The conversation which Parker relies upon does not evidence an intent to exclude Rawls from use. Of course, Parker's fence indicated exclusive use; however, Rawls so strongly objected to the fence that Mrs. Parker took it down because she did not want to fight. After Mr. Dawkins surveyed the land, Parker erected a second fence and it was at that time Rawls took legal action. It is clear that Parker attempted to exclude Rawls but failed.
Finally, Parker argues that the element of peacefulness is met by Rawls failure to object during his conversation with her regarding the possession line. Again, she was only peaceful until the fence actually materialized.
We hold that the chancellor erred in finding that Parker owned the land by adverse possession.

II. WHETHER THE CHANCELLOR'S ADOPTION OF EXHIBIT D-2 AS THE CORRECT SURVEY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
Rawls next argues that the decision of the chancellor was against the overwhelming weight of the evidence. Testimony concerning the location of the property line included: (1) Rawls' testimony that the line of possession between her property and Parker's property had always been considered a barbed wire fence and in years past, a family store/cafe had aligned the fence; (2) testimony of Clarence Howard, Rawls' brother-in-law, that he remembered the store/cafe and that Parker's garden was south of the store's prior location; (3) Rev. William H. Parker's testimony that he was familiar with the new fence which Parker had put up, but could not say whether the store was north or south of where the fence is now located; (4) Ethel Parker's testimony that when the Highway Department bought the land from Rawls, the old fence was pushed away and that the new fence was placed on the same line as the old boundary fence; (5) William Parker's testimony that the new fence was on the half section line; and (6) testimony of Anderson, Parker's grantor, that when he *1170 conveyed his property in 1969, the fence was considered the property line and he did not intend to convey anything south of the fence.
Lang, the surveyor, based his survey upon the descriptions in the deeds of the parties, a corner pointed out by Parker himself as being an accepted corner, a fence which stood only three feet south of the projected property line and the evidence of the highway department surveys. Whereas Dawkins ran his survey from a pine knot at a fence corner, generally accepted in the area as being the southwest corner of section 6. This information Dawkins obtained from a Mr. Thimbs, a long-time resident of the area. "[W]here the monuments of a survey have disappeared evidence of common reputation as to the location of the boundaries and corners is admissible." Johnstone v. Nause, 233 Miss. 584, 596, 102 So.2d 889, 894 (1958).
Dawkins' survey placed the property line 55 feet south of the old fence, whereas Lang's survey placed the line approximately 55 feet north of Dawkins' line. Although both surveyors used accepted practices, they disagreed about approximately 55 feet. Rawls makes much ado in comparing the two surveys; however, after applying the substantial evidence/manifest error test we hold that substantial credible evidence exists supporting the chancellor's judgment under this issue.
Although the chancellor did not expressly recognize Dawkins' survey, it would appear he impliedly did so. The record contains substantial evidence to support such a finding, so the chancellor's decision was not manifestly erroneous. The surveys were made by two registered land surveyors using generally accepted surveying principles, and it was within the chancellor's purview to recognize one survey and reject the other. The trial court's acceptance of Exhibit D-2 was not against the overwhelming weight of the evidence.

CONCLUSION
The chancellor erred in determining that Parker had obtained title to the disputed property by adverse possession. The error does not benefit appellant Rawls, however, since the chancellor implicitly accepted a survey which indicated that Parker, not Rawls, held record title to the land in question. This implicit finding rendered Parker's adverse possession claim unnecessary. That the chancellor may have traveled the wrong route does not require reversal so long as he reached the proper destination. Patel v. Telerent Leasing Corp., 574 So.2d 3, 6 (Miss. 1990); Bell v. Bell, 572 So.2d 841, 846 (Miss. 1990); Shewbrooks v. A.C. & S., Inc., 529 So.2d 557, 564 (Miss. 1988); Bonderer v. Robinson, 502 So.2d 314, 317 (Miss. 1987). We hold that the chancellor did not err in dismissing Rawls' complaint.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BANKS, JJ., concur.
NOTES
[1] Ms. Rawls sold said right-of-way to the State by warranty deed at Book 383, Page 511, of the Chancery Clerk's Office in Rankin County, dated March 15, 1979. Lang used the same deeds and descriptions which the State Highway Department used in its acquisition.