# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 95-CA-00837 COA

**DALTON WALLACE AND WIFE, BOBBY CARNEY**　　　　　　**APPELLANTS**
**WALLACE, DEZZIE WALLACE,**

**GLENDA RUTLAND, AND GENNELL NELSON**

**v.**

**LADON WALLACE AND WIFE, DUTHA WALLACE**　　　　　　**APPELLEES**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED,
PURSUANT TO M.R.A.P. 35-B

| | |
|---|---|
| DATE OF JUDGMENT: | 03/10/95 |
| TRIAL JUDGE: | HON. LARRY BUFFINGTON |
| COURT FROM WHICH APPEALED: | LAWRENCE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | ROBERT W. LAWRENCE |
| ATTORNEY FOR APPELLEE: | MALCOLM T. ROGERS |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| TRIAL COURT DISPOSITION: | CHANCELLOR CONFIRMED THE COURT ORDERED SURVEY AND ENTERED FINAL JUDGMENT AFFIRMING PROPERTY LINE DIVISION. |
| DISPOSITION: | AFFIRMED - 10/21/97 |
| MOTION FOR REHEARING FILED: | November 5, 1997 |
| CERTIORARI FILED: | 12/29/97 |
| MANDATE ISSUED: | 4/15/98 |

BEFORE BRIDGES, C.J., HERRING, AND PAYNE, JJ.

BRIDGES, C.J., FOR THE COURT:

This case involves a very long, drawn out, boundary line dispute between brothers. The chancellor adopted the survey of the court-appointed surveyor instead of the owner's survey. On appeal, Dalton Wallace presents the following:

> I. THE SURVEYOR DID NOT FOLLOW THE ORDER OF THE TRIAL CHANCELLOR WHEREIN THE SURVEYOR DID NOT USE GOVERNMENT LAND OFFICE DATA.

> II. THE SURVEYOR USED UNVERIFIED MONUMENTS THAT WERE IN DISPUTE AS

A BENCHMARK DESPITE THE TRIAL CHANCELLOR'S ORDER NOT TO USE MONUMENTS ON THE GROUND.

III. THE TRIAL CHANCELLOR RULED THE COURT SURVEYOR MADE SUBSTANTIAL ERRORS BUT THE SITTING CHANCELLOR ENTERED THE SURVEY WITHOUT HEARING, READING, OR CONSIDERING THE APPELLANT'S EVIDENCE THAT THE SURVEY CONTAINED MATERIAL SERIOUS ERRORS VIOLATING DUE PROCESS RIGHTS OF THE APPELLANT.

We will address Dalton's issues in toto below. Finding no error, we affirm.

FACTS

This saga began in 1987 when Ladon Wallace filed a complaint to cancel clouds on his title. The complaint was filed during the term of Chancellor Jack Walker. Judge Walker heard testimony in the case but never rendered a final opinion therein, leaving that to his successor, Chancellor Harris Sullivan, who took office in 1991. Judge Sullivan also heard testimony of numerous witnesses, made findings of fact, but rendered no final opinion, specifically reserving that task for the incoming Chancellor, Judge Larry Buffington, who assumed the office in 1995. Chancellor Buffington also heard testimony, entered evidence of prior hearings along with the findings of Chancellor Sullivan and made his final ruling in the case on June 26, 1995, adopting the court-appointed survey.

Through the eight years of hearings with the three chancellors, there were also a number of surveys made by at least three different surveyors. These surveys, as they existed by date, were all considered by the respective chancellor, and the record reveals the results of both Chancellor Sullivan's and Chancellor Buffington's consideration of same. Chancellor Buffington concluded the case and based his findings and final opinion on the survey of Dungan Engineering, P. A. dated March 9, 1994. We assume that this survey was altered or amended by its maker between said date of March 9, 1994 and the date of the final judgment of June 26, 1995, but the record does not bear that out, except by supposition after the last findings of Chancellor Buffington on March 10, 1995.

This action involves 200 acres of land originally owned by Troy Wallace and wife, Dezzie Wallace, parents of the appellant Ladon Wallace and the appellee Dalton Wallace. In 1973 Troy Wallace and wife voluntarily partited the 200 acres of land by dividing it into three tracts, and executing three deeds, one to each of his sons--Ladon, Darry and Dalton. The three tracts of land were not equal in size, Ladon's being 84 3/4 acres, Darry's being 14 3/4 acres and Dalton's being 99 ½ acres. In December of 1996, Darry conveyed to Ladon his 14 3/4 acres. Since Darry's tract was merged into Ladon's, we now have two large tracts of land with one boundary line in contention and the description of the one acre tract occupied by Dezzie to be established.

At the time Troy agreed to give his sons the land in question, all agreed that Ladon would make the mathematical calculations to determine the descriptions to each tract of land and that he would engage a lawyer to draft the deeds conveying each tract of land to the respective grantee. This was done with Ladon preparing a plat of the 200 acres showing each tract of land as divided and said plat was attached to each of the three deeds prepared by the attorney. When Ladon made his calculations and prepared the descriptions, he made provision for the reservation of a one acre tract of land out of the Ladon and Darry tracts to be occupied and used by their parents, Troy and Dezzie for their

lifetimes.

The problem with Ladon's descriptions is that his calculations were based upon the assumption that the section wherein the land in question lies was a perfect one mile square section, measuring 80 chains by 80 chains, with 640 acres of land embraced within. This was not the case and as time progressed after the recording of the deeds and attempts to erect fences on land lines, disputes arose between Ladon and Dalton as to where the true land lines were.

Ladon's descriptions for each tract of land as reflected in the deeds executed by Troy Wallace and wife, lacked bearings, and in some instances lacked calls, particularly as to the one acre tract, which would accurately identify the necessary corners to the divided property. Also, those calls given in the descriptions were based upon each forty acre tract of land involved measuring 1,320 feet both east and west and north and south.

Upon discovering that there was more land on the ground than described in the deeds, Chancellor Sullivan appointed a surveyor to run the lines and establish certain points between the parties' properties. Additional surveys were caused to be made by the original defendants. These surveys showed encroachments of fences at various locations, inaccuracies in calls and measurements, and established land lines by monuments and section lines.

It is not unusual that each of the surveys entered as exhibits differ remarkably. It is worth noting, however, that the two surveyors who testified and whose surveys were admitted into the record testified that they could not find the heart pine post which was alleged by all parties to have been at or near the northwest corner of the Southwest Quarter of the Northwest Quarter of Section 36, but each of them used the quarter section corner as their starting point.

Chancellor Sullivan on January 10, 1991, found that the parties intended to divide and occupy the land according to the plat attached to each deed. Further, Chancellor Sullivan established a boundary line between the Plaintiff Ladon and the Defendant Dalton, and generally described the one acre of land to be occupied by Dezzie, widow of Troy. He instructed a court appointed surveyor, Jack Day, to go onto the land, prepare a survey in accordance therewith, and mark the lines and corners. For some reason Jack Day was unable to perform this work, but Dungan Engineering, P. A., was approved by all parties and accepted by the Court in 1993 to perform such services and a judgment was entered to comport with his ruling.

The Dungan survey was completed and filed with the court in 1994. Subsequently, Dalton objected to the survey and a hearing was held on December 8, 1994 by Chancellor Sullivan. Chancellor Sullivan heard testimony from the court-appointed surveyor as well as the surveyor hired by Dalton to perform a subsequent survey. In refusing to enter a final judgment, the chancellor stated the following:

> [T]his Court finds that there is a substantial basis to the objection. Let me say this. I'm not deciding the court-appointed surveyor is not right. For all I know, he is exactly right, although there is some substantial evidence to the effect that it is not right. It may be that the court-appointed survey is the best that can be done under the circumstances of this case.
>
> . . . . So let me make this clear that I am not ruling against the court-appointed surveyor. I am

not holding that it is inaccurate. I am simply holding . . . that there is some substantial basis for the objection. . . .

Now, I think that the Judge that comes in on January 1st or 2nd, I think that it is going to be up to him to determine whether or not the court-appointed survey is correct or whether or not the other survey is correct or exactly what is correct.

With that, Chancellor Sullivan washed his hands of the case and left the decision of which survey was correct to the incoming chancellor. Therefore, Chancellor Buffington held a hearing on March 10, 1995, and after hearing the testimony of the court-appointed surveyor, allowed the findings of Chancellor Sullivan on December 4, 1994 to be made a part of his ruling. Chancellor Buffington accepted the plat of Dungan Engineering, P. A. dated March 9, 1994, as the court appointed survey and made his final judgment therefrom, making references from said survey when he finally described a boundary line dividing the lands of Ladon and Dalton, and further describing the one acre tract belonging to Dezzie. Said one acre tract of land had been previously described in the form of a square, a parallelogram, a quadrilateral and possibly a trapezoid. The final judgment of Chancellor Buffington, according to the survey of Dungan, configures said one acre into the shape of a pentagon. It appears that the survey of Dungan correctly described the land in question and complied with the testimony of the parties, as well as, the findings and order of Chancellor Sullivan. The Dungan survey reflected both monumental markers and government land office data in the making thereof.

## DISCUSSION

Only Ladon and wife, and Dalton and wife, are involved in this appeal. The main issue before this court is whether the last sitting Chancellor, Judge Buffington erred in using the survey of the court appointed surveyor in his final ruling establishing the boundary line between the parties, as well as describing the one acre tract in question. We believe he did not, and thus affirm the chancellor. Our standard of review of a chancellor's ruling is limited. The determination of the legal boundary between parties is a question of fact for the chancellor, and his decision will not be reversed unless manifestly in error. *Farris v. Thomas et ux*, 481 So. 2d 318, 319 (Miss. 1985).

Chancellor Sullivan heard testimony from both surveyors. The court-appointed surveyor testified that he made his survey based on Chancellor Sullivan's judgment. In so doing, the court-appointed surveyor used both Government Land Office (GLO) records and particular monuments on the ground in formulating his survey. Dalton's surveyor on the other hand, did not follow Chancellor Sullivan's judgment and relied exclusively on GLO records to the exclusion of anything on the ground. After hearing the conflicting testimony of the surveyors, Chancellor Sullivan refused to rule and passed that responsibility to Chancellor Buffington. Chancellor Buffington followed the mandate from Chancellor Sullivan and chose one of the surveys.

Both surveyors utilized accepted surveying practices although there are resulting differences in the outcomes. Nonetheless, there was substantial credible evidence in the record to support Chancellor Buffington's choice of the court-appointed survey. Like the case of *Rawls v. Parker*, 602 So. 2d 1164, 1169 (Miss. 1992), "[t]he surveys were made by two registered land surveyors using generally accepted surveying principles, and it was within the chancellor's purview to recognize one survey and reject the other." In *Mabry v. Winding*, 229 Miss. 88, 93, 90 So. 2d 175, 177 (1956), the court was

also faced with conflicting surveys and conflicting testimony. However, the supreme court concluded that such testimony presented factual issues best resolved by the chancellor. *Id.* "Factual questions relating to the making of the survey are for the resolution of the chancellor." *Craft v. Thompson*, 405 So. 2d 128, 130 (Miss. 1981).

Dalton claims that his due process rights were violated because his surveyor was not allowed to testify. To the contrary, Dalton's surveyor gave extensive testimony about the making of his survey. He was heard by Chancellor Sullivan, who thereafter left it up to Chancellor Buffington to choose a survey. Chancellor Sullivan did not state that the court-appointed survey was wrong. In fact, he admitted that it may well be right. But he chose not to enter judgment. Chancellor Buffington refused to relitigate the case, after it being in the court for eight years. He listened to the court-appointed surveyor who testified not only to his own surveying methods, but also those utilized by Dalton's surveyor. Exercising his judicial discretion, Chancellor Buffington found that the court-appointed survey was correct and established the boundary line accordingly. Dalton proffered the trial transcript of his surveyor. After reviewing the complete records, including all of the various surveys, we conclude that Chancellor Buffington had substantial evidence upon which to base his decision.

**THE JUDGMENT OF THE LAWRENCE COUNTY CHANCERY COURT ADOPTING THE DUNGAN SURVEY TO ESTABLISH BOUNDARY LINES AND THE ONE-ACRE TRACT IS AFFIRMED. COSTS OF THIS APPEAL TAXED TO THE APPELLANTS.**

**McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.**