IN THE COURT OF APPEALS OF THE
STATE OF MISSISSIPPI
NO. 97-CA-01547-COA

DAVID M. COX, PAUL D. EAVENSON AND GULF FORESTRY
ASSOCIATES, INC.       APPELLANTS
v.
F-S PRESTRESS, INC.   APPELLEE

DATE OF JUDGMENT:       11/17/1997
TRIAL JUDGE:   HON. JOHNNIE WILLIAMS
COURT FROM WHICH APPEALED:       FORREST COUNTY CHANCERY
COURT
ATTORNEY FOR APPELLANTS:   WILLIAM H. JONES
ATTORNEY FOR APPELLEE:       ROBIN L. ROBERTS
NATURE OF THE CASE:       CIVIL - REAL PROPERTY
TRIAL COURT DISPOSITION:       TITLE TO REAL ESTATE QUIETED IN
APPELLEE
DISPOSITION:   AFFIRMED - 7/20/99
MOTION FOR REHEARING FILED:
CERTIORARI FILED:
MANDATE ISSUED:


        BEFORE McMILLIN, C.J., KING, P.J., AND DIAZ, J.
        KING, P.J., FOR THE COURT:

¶1.    This case came as an appeal from the judgment of the Forrest County Chancery

Court which found that F-S Prestress, Inc. should recover $27,118.52 from David M.

Cox and Paul D. Eavenson for the cutting of timber from F-S Prestress's land in

violation of Miss. Code Ann. §  95-5-10(1) (Rev. 1994).  The parties are adjoining

property owners and both sides claimed ownership of the  tract of land from which

the timber was removed.

¶2.    On appeal, the appellants raise the following issues:

(1) BOUNDARY LINES DEFINED BY THE BOUIE RIVER REMAINED CONSTANT AMONG CONTIGUOUS PROPERTY OWNERS EVEN AFTER THE BOUIE RIVER MADE A CHANGE OF COURSE BECAUSE THE CHANGE WAS AVULSIVE AND NOT THE RESULT OF ACCRETION.

(2) COX AND EAVENSON ALSO OWN THE ISLAND PROPERTY TO THE EAST OF THE OLD CHANNEL BY ADVERSE POSSESSION AND UNDER COLOR OF TITLE.

(3) THE FAIR MARKET VALUE OF THE TIMBER REMOVED FROM THE ISLAND PROPERTY WAS $3800 BEING THE AMOUNT RECEIVED BY THE SELLER.

¶3.    We find no basis for the reversal of the chancery court judgment and affirm that judgment.

FACTS

¶4.    This case involves a dispute between two adjoining property owners concerning approximately seventeen acres of land, located on the Bouie River (also referred to as the Bowie River) in Forrest County.  The dispute exists because of the changes in the course of the river, which acted as the boundary to the lands of the parties on the east and west of the river.  Originally, there was a meander in the river creating a peninsula of land lying to the east of the river.  It is undisputed that the river changed its course,  leaving the peninsula as an island, which lies west of the new channel of the Bouie River.

¶5.    Wiley Fairchild and James W. Snowden, Jr. purchased land from W. A. Steele

and wife, Corine S. Steele, on April 18, 1957, and then transferred the property to their company, F-S Prestress, Inc., on May 3, 1957. The property was described, in part, as

> That part of the W ½ of NE 1/4 lying and being West of Bouie River, and that part of the E ½ of the NW 1/4 lying and being West of Bouie River, and that part of the NW 1/4 of SE 1/4 lying and being West of Bouie River, and NE 1/4 of SW 1/4 and a parcel of land on the S ½ of SW 1/4 of SW 1/4 . . . .

¶6.     David M. Cox and Paul Eavenson purchased the adjoining property east of the Bouie River on January 17, 1989, from First Guaranty Bank for Savings, which had foreclosed on a deed of trust to Associated Land Developers, Inc. The predecessors in interest to Associated Land Developers were C. A. Clinton, Jr., and wife, Valcoe Clinton. The property owned by the Clintons in Section 14 was described as

> Commence at the Northeast Corner of the Northeast Quarter of Section 14, Township 5 North, Range 14 West, Forrest County, Mississippi, and run West 853.7 feet, thence run Southeast along the West line of Illinois Central Railroad right-of-way 300 feet to and for the point of beginning; thence run South 55 degrees 40 minutes West a distance of 376 feet, thence run South 36 degrees East a distance of 494 feet, thence run South 71 degrees, 30 minutes West to Bouie River, then run Southeast along the Northeast side of said river to the West line of said railroad right-of-way, thence run Northwest along said railroad right-of-way to the point of beginning . . . .

¶7.     On December 31, 1992, Cox and Eavenson gave Gulf Forestry Associates, Inc., Daniel K. McGee, a warranty timber deed to

> All that area considered an island bordered by Bowie River on the north and east sides and the old river bed of the Bowie River located in the

North half of Southeast quarter, Section 14, T5N, R14W, Forrest County, Mississippi.

Gulf Forestry paid Cox and Eavenson approximately $2,832.33 for the timber removed. Another timber company paid them $605.42 and $338.08.

¶8. The chancery court entered judgment for F-S Prestress, granting it quiet title to the disputed property and entered judgment in the amount of $27,118.52.

## DISCUSSION

¶9. The first issue is whether the change in the river was through avulsion, which would not affect title, or accretion. The chancery court awarded the property to the landowners west of the river on a theory of accretion.

¶10. The law in Mississippi is well settled that changes in a stream or river that occur gradually over time which change the boundary of the property is referred to as accretion. An avulsive or sudden change in the course of a river causes the property lines to stay the same. *Robinson v. Humble Oil & Refining Co.*, 176 So. 2d 307, 316-17 (Miss. 1965). In *Sharp v. Learned*, 14 So.2d 218, 220 (Miss. 1943), the court explained

> Accretion or alluvion is an addition to riparian land made by the water to which the land is contiguous, so gradually and imperceptibly that, though the witnesses may see from time to time that progress has been made, they could not perceive it while the process was going on . . . . Avulsion is a change in a boundary stream so rapidly or so suddenly made, or in such a short time, that the change is distinctly perceptible or measurably visible at the time of its progress.

¶11. Dr. Don Williams, associate professor of geography at the University of Mississippi, testified that the process of the change in the course of the Bouie River was the result of a long process of erosion and accretion. A series of aerial photographs from 1942 and 1952 and a topographical map from 1965 showed that the change in the river was gradual.

¶12. Mrs. Addie Clinton Holliman, whose husband and son were predecessors in interest to Cox and Eavenson, testified that water began to flow over the new channel yearly in the early 1960's and that the process of the new channel forming occurred over a long period of time.

¶13. This Court "will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Broadhead v. Bonita Lakes Mall, Ltd. Partnership*, 702 So. 2d 92, 96 (Miss. 1997). While errors of law may be reviewed *de novo*, the standard of review for factual determinations is the substantial evidence standard. *Id.*

¶14. We find that the findings of the court were supported by the evidence and reject the appellant's argument to the contrary.

II.

¶15. The appellants next argue that they are the owners of the property by adverse possession. The chancery court stated "[b]ecause the Plaintiff has shown that it owns

the property in dispute by a gradual change in the course of the Bouie River, there is no need to examine the Plaintiff's adverse possession claim." The court also did not address the appellants/defendants' claim of ownership by adverse possession.

¶16. Miss. Code Ann. § 15-1-13 (Rev. 1995) provides that "[t]en (10) years' actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten (10) years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title." The adverse possessor must show that "possession of the disputed property was (1) open, notorious and visible; (2) hostile; (3) under claim of ownership; (4) exclusive; (5) peaceful; (6) continuous; and (7) uninterrupted." *Rawls v. Parker*, 602 So. 2d 1164, 1168 (Miss. 1992).

¶17. The appellants do not make a compelling argument that the court should have addressed their claim of adverse possession. Their argument is based primarily under claim of ownership through their predecessors in title. In 1946, the Clinton family took title to the 105 acres east of the Bouie River. In 1951, Mr. Clinton sold timber on the property described as the island cutoff by the Bouie River. The burden of proof was upon the appellants to establish by competent evidence the particular area claimed by them. *Page v. O'Neal*, 42 So. 2d 391 (Miss. 1949). Appellants do not point to any specific acts by them or their predecessors in title which would satisfy

the requirements for adverse possession of the disputed property after the change in the Bouie River's channel.

¶18. The testimony at trial was that the Forrest County Tax Assessor's Office had assessed the disputed property to F-S Prestress, Inc. and that they had consistently paid the taxes. While the payment of taxes alone may not be reason to find adverse possession, the payment of taxes has been found to be a persuasive point to consider in finding ownership by adverse possession. *Native Lumber Co. v. Elmer*, 117 Miss. 720, 723, 78 So. 703, 705 (Miss. 1918). "Discussing the question of the payment of taxes as evidence of adverse possession, the Supreme Court of the United States says: 'Payment of taxes, as described in the above statement of facts, is very important and strong evidence of claim of title; and the failure of the plaintiff's predecessors to make any claim to the lot, or to pay the taxes themselves, is some evidence of an abandonment of any right in or claim to the property.' In *Ewing v. Burnet,* 36 U.S. 41, it was held by this court that payment of taxes on land for 24 successive years by the party in possession was powerful evidence of the claim of right to the whole lot upon which the taxes were paid." *Native Lumber Co.*, 78 So. 705, (quoting *McCaughn v. Young*, 85 Miss. 293, 37 So. 839 (1905)).

¶19. We find that the chancery court did not err in failing to consider the appellants' claim of adverse possession.

III.

¶20.   The appellants argue that the court should have based the damage award solely on the amount they received for the timber.  The testimony was that the appellants were paid approximately $3776 for the timber.  Gulf Forestry paid $2832.33 and another company, Southgate, paid $605.42 and $338.08.

¶21.   Miss. Code Ann. § 95-5-10(1) provides:

> If any person shall cut down, deaden, destroy or take away any tree without the consent of the owner of such tree, such person shall pay to the owner of such tree a sum equal to double the fair market value of the tree cut down, deadened, destroyed or taken away, together with the reasonable cost of reforestation, which cost shall not exceed Two Hundred Fifty Dollars ($250.00) per acre.

¶22.   The court found that the "fair market value of the trees harvested on the disputed property is the value of the trees as they stand in the woods."  The court based its findings on the testimony of Kip McGee, vice president of Gulf Forestry Associates, who stated that "fair market value would be what  timber sells for while it's standing in the woods."

¶22.   Mr. McGee was asked to calculate the market value of the timber that was sold off the property.  In his calculations he included the amount received from the mill, the amount paid to the loggers, and the amount paid to the appellants.  To the figure of $9,128.38, he added $2,730.88 as his calculation of the value of the timber harvested by Southgate.  The figure of $11,859.26 arrived at by Mr. McGee was used by the court in calculating the award of damages.  The court awarded $23,718.52 in

damages or double the amount testified to by Mr. McGee.

¶23. The appellants state in their brief: "The lower court [found] that the fair market value of the trees harvested was the value of the trees as they stood in the woods, or $11,859.26. This may be the actual value of the trees, or the amount the logger must sell the timber for to make a profit, but it is not the fair market value paid to the owner." The appellants do not offer any authority that the price paid to the owner is the "fair market value" contemplated by the statute.

¶24. In reaching its conclusion as to the fair market value of timber, the chancery court had to rely on the testimony or evidence presented. The substantial evidence, as presented through the testimony of Mr. McGee, supports the finding of the court. Consequently, this Court affirms the decision of the court.

¶25. THE JUDGMENT OF THE CHANCERY COURT OF FORREST COUNTY IS AFFIRMED. COSTS OF APPEAL ARE ASSESSED TO THE APPELLANTS. STATUTORY PENALTIES AND INTEREST ARE AWARDED.

McMILLIN, C.J., SOUTHWICK, P.J., DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR. BRIDGES AND MOORE. JJ., NOT PARTICIPATING