HARMON *v.* BUCKWALTER, et al.

No. 40812          May 26, 1958          102 So. 2d 895

762

*Nate S. Williamson*, Meridian; *Laurel G. Weir*, Philadelphia, for appellant.

*O. B. Triplett, Jr.*, Forest; *Sanford & Alford*, Philadelphia, for appellees.

LEE, J.

William W. Buckwalter and another, trustees, in their bill of complaint to remove a cloud from the title of the two forties of land, as therein described, and to recover

the value of timber alleged to have been wrongfully cut, deraigned the title from the United States of America to the date of filing their suit. It was alleged that they obtained title through mesne conveyances, as a result of tax sales to the State on August 4, 1930, for the taxes of 1929, and on April 11, 1932, for the taxes of 1931, respectively.

The defendant John M. Harmon, by his answer and cross bill, denied the validity of the tax sales, and set up his title by adverse possession, commencing with his predecessors in title in 1907, and continuing uninterruptedly until the date of the trial.

At the conclusion of the evidence, the court awarded to the complainants the relief which they sought, and the defendant appealed.

The proof showed that the sheriff and tax collector did not, on the first Monday of April, 1930, sell all of the lands which were delinquent for taxes for the preceding year. Consequently the Board of Supervisors of Newton County, at a regular meeting, on July 7, 1930, ordered the sheriff and tax collector to advertise and sell all of such lands on the first Monday of August 1930. The officer acted pursuant to that order, and made the first sale on August 4, 1930.

The proof further showed that the sheriff and tax collector, on the first Monday and 4th day of April 1932, began the sale of lands on which the taxes were delinquent for 1931, and continued during legal hours until all sales had been made. This required all of that week and through the following Monday, April 11th, until the land here involved had been sold.

The defendant testified that his father, in 1907, built a fence around the acreage in question and utilized the land for pasture purposes; that a brother, Mark M. Harmon, succeeded to the ownership and such possession; and that he, the defendant, obtained title thereto on July 29, 1939, and had continued in adverse possession thereof

ever since. He admitted that he had not paid any taxes on this land. A number of witnesses testified to the existence of a fence, which enclosed the disputed acreage, some saying that it was substantial, while others admitted that it was "zigzagging" and nailed largely to trees. One of the defense witnesses testified that the defendant told him that the Cotton States Lumber Company, after cutting the timber, permitted his father to put up the fence and use the land for grazing his cattle. The defendant denied that he had made such a statement to anybody.

On the contrary, the evidence for the complainants was to the effect that the fence was nailed largely to trees; that it was old; that much of it was down; that it would not turn cattle; and that some new wire had been strung only in the last year or two. Besides the complainants had paid all taxes ever since they obtained title to it on April 28, 1950.

At the conclusion of the evidence, the Chancellor in a written opinion, resolved the issues as follows:

"It is my opinion that the two tax sales involving the land in dispute in the above matter were valid sales. It follows that if the trustees were divested of the approximately nine and one-half acres by adverse possession that such adverse possession has been since the state issued its two forfeited tax patent deeds. The fence was built in 1907 by the father of the defendant by permission of the then owner of the land. While the state held title to the land and for a good while after the fence was not kept in repair and cattle of the neighborhood after the crops were gathered grazed at will on the nine and one-half acres involved in this lawsuit and elsewhere. The occupancy of the land by Mr. Harmon does not meet the requirements of the statute to divest the record title owner of the property. His possession was not exclusive and was not notice to the record owner of the land or anyone else.

"Since the trustees have owned the land they have paid all taxes. Here we have nearly ten acres which the Defendant testified that he was claiming but yet he did not have that ten acres assessed to him and has never paid taxes on the property. If this had been done it certainly would have been notice to the world but there was no notice in the public records of the county and there was really no notice on the ground that he was claiming the land until 1949 when an attempt was made to cut the timber. The stopping of the cutting of the timber was the first notice to the trustees that there was an adverse claim to the land. At that time in 1949 there was not a fence there that would turn cattle, in fact, the fence was down in as many places as it was up. Perhaps more. * * * ."

The appellant contends that the tax sales were void because they were made at the wrong time; that the decree was contrary to the overwhelming weight of the evidence; and that the bill failed to show the capacity of the complainants as trustees.

■■ Under Section 4367, Code of 1906, and Section 3252, Code of 1930,—the statutes were identical—it was provided: "If from any cause a sale of any land for taxes which is liable to such sale shall not be made at the time appointed by law for such sale, it may be sold thereafter, in the same or a subsequent year, at any time designated therefor by order of the board of supervisors. * * * ." Under the order of the board of supervisors of date of July 7, 1930, directing the sheriff and tax collector to sell all lands delinquent for taxes on August 4, 1930, manifestly this sale was valid.

■■ Section 3249, Code of 1930, fixing the time and manner of sale of lands for delinquent taxes, provided that: "* * * The sale shall be continued from day to day within the hours for sheriff's sales until completed; * *." The proof showed that the tax collector began the sale of lands for delinquent taxes for 1931 on Monday morn-

ing, April 4, 1932, at 11 o'clock and so much land had to be sold that he continued the sale until 4 o'clock P.M. each day throughout the week, and that he did not reach the sale of the land here in question until the following Monday, April 11, 1932, when it was then sold. It is obvious that there was no defect in this sale on account of the time at which it was made. Standard Drug Co. v. Pierce, 111 Miss. 354, 71 So. 577.

The bill of complaint, on objection, was amended to allege that the complainants held title as trustees under certain recorded trust instruments, describing them, and copies of those instruments were introduced in evidence. It appears therefore that appellant's contention in this respect is untenable.

The learned chancellor heard the statements of the witnesses and observed their demeanor. On the sharply disputed issue of adverse possession, there was sufficient evidence to warrant his finding. It is clear that this Court cannot say that he was manifestly wrong.

From which it follows that the decree of the trial court must be, and is, affirmed.

Affirmed.

*Roberds, P. J.,* and *Arrington, Ethridge* and *Gillespie, JJ.,* concur.