TINDELL, J., CONCURRING IN PART AND DISSENTING IN PART:
 

 ¶ 41. While I concur with the majority opinion as it pertains to the award of attorney fees, on the issue of adverse possession, I must respectfully dissent. "Clear and convincing" is a high order of proof that requires even more proof than "overwhelming weight of the evidence."
 
 Bailey v. Woodcock (In re C.B.)
 
 ,
 
 574 So.2d 1369
 
 , 1375 (Miss. 1990). To prevail upon an adverse-possession claim, one must prove each of its six required elements by this extraordinarily high standard of proof.
 
 West v. Brewer
 
 ,
 
 579 So.2d 1261
 
 , 1262 (Miss. 1991). Here, the record lacks the indispensable, clear and convincing proof necessary for the Rainwaterses to prevail on their adverse-possession claim of the disputed property. To find otherwise, in my opinion, is manifestly wrong.
 

 ¶ 42. "The ultimate question is whether the possessory acts relied upon by the would[-]be adverse possessor are sufficient enough to place the record title holder on notice that the lands are under an adverse claim of ownership."
 
 Stringer v. Robinson
 
 ,
 
 760 So.2d 6
 
 , 10 (¶ 13) (Miss. Ct. App. 1999). The Rainwaterses' possessory acts, as testified to by Austin, consisted of his father harvesting turpentine on the disputed parcel in the 1950s, hiring someone to mark their boundaries with yellow paint in 1987, and leasing the disputed land to a hunting club. However, there was no evidence as to exactly how many years the turpentine was harvested, if the record title holder was ever made aware of the yellow blaze (and even if he was aware of the yellow blaze, did he know it was there to identify a boundary), and if the hunting club ever actually hunted on the disputed property. The only evidence that establishes notice to the record title holder is Austin's testimony that he told Allen about the purported boundary lines within the last ten years. These acts simply are not enough to meet the clear and convincing standard required to establish actual and hostile possession by the Rainwaterses of the disputed property.
 
 [8]
 

 ¶ 43. An adverse possessor must "fly his flag over the lands" of the documented owner.
 
 O'Neal v. Blalock
 
 ,
 
 220 So.3d 234
 
 , 240 (¶ 14) (Miss. Ct. App. 2017) ;
 
 Hill v. Johnson,
 

 27 So.3d 426
 
 , 431 (¶ 19) (Miss. Ct. App. 2009). Mississippi caselaw has repeatedly recognized that the mere presence of a fence, without more, has never been sufficient to sustain a claim of adverse possession.
 
 See
 

 Double J Farmlands Inc. v. Paradise Baptist Church
 
 ,
 
 999 So.2d 826
 
 , 829 (¶ 15) (Miss. 2008) ;
 
 Davis v. Clement
 
 ,
 
 468 So.2d 58
 
 , 63 (Miss. 1985)
 

 ;
 
 Harmon v. Buckwalter
 
 ,
 
 233 Miss. 761
 
 , 763-66,
 
 102 So.2d 895
 
 , 896-98 (1958) ;
 
 Snowden & McSweeny Co. v. Hanley
 
 ,
 
 195 Miss. 682
 
 , 686-88,
 
 16 So.2d 24
 
 , 25-26 (1943). Here, the Rainwaterses do not even have a fence. Instead, they assert the boundaries were established by the following: a single tree blazed with some yellow paint and three-fourth-inch pipe at one purported corner; some painted markings "meandering" along the ground in an overgrown section of the property that purported to be the property line; a single fence post in another purported corner; and an old fire lane meandering through another overgrown area along the other purported property line.
 
 [9]
 
 To give weight to the aforementioned evidence over the clear wording of a deed's legal description would be a giant step away from the "clear and convincing" standard and the "open, notorious, and visible" element required in adverse-possession caselaw.
 

 ¶ 44. To illustrate the evidence needed, an adequate showing of adverse possession was made in
 
 Scott v. Anderson-Tully Co.
 
 ,
 
 154 So.3d 910
 
 , 916 (¶ 16) (Miss. Ct. App. 2015), where the would-be adverse possessor "distinctly" painted the borders and wire fence of a disputed property. The supporting evidence in
 
 Scott
 
 was stronger than in this case and included the following: the fence line was repeatedly painted and was done in such a manner that it was easily recognizable; testimony was presented that the community itself recognized the property line; the timber (not just sap from the tree) had been harvested on at least three occasions; and hunting leases were issued five separate times on the disputed property (and the record contained written copies of the contracts with plats attached that included the disputed property).
 

 Id.
 

 Further, the evidence in
 
 Scott
 
 showed the would-be adverse possessor constantly worked and maintained the land. By contrast, the Rainwaterses admitted the area in dispute here had become overgrown and that they only visited the property a couple times a year. Clearly,
 
 Scott
 
 is distinguishable from this case.
 

 ¶ 45. I am keenly aware that "[t]he credibility of the witnesses and the weight of their testimony, as well as the interpretation of evidence where it is capable of more than one reasonable interpretation, are primarily for the chancellor as the trier of facts."
 
 Polk v. Polk
 
 ,
 
 559 So.2d 1048
 
 , 1049 (Miss. 1990) (quoting
 
 Rainey v. Rainey
 
 ,
 
 205 So.2d 514
 
 , 515 (Miss. 1967) ). Furthermore, it is of the utmost import that this Court be bound by the "severely limited substantial[-]evidence/manifest[-]error standard of review."
 
 Stallings v. Bailey
 
 ,
 
 558 So.2d 858
 
 , 861 (Miss. 1990) (citing
 
 Savage v. Parrish
 
 ,
 
 488 So.2d 1342
 
 , 1342 (Miss. 1986) ;
 
 Johnson v. Black
 
 ,
 
 469 So.2d 88
 
 , 90 (Miss. 1985) ). However, I believe we are equally required to not erode the extraordinarily high "clear and convincing" standard of proof necessary to take the property of another through adverse possession. If the chancellor's decision is affirmed, I believe such an erosion will occur. I therefore must respectfully dissent from that portion of the majority's opinion that affirms the chancellor's finding of adverse possession.
 

 Austin testified that they routinely used a road on the disputed property to access the adjoining property. Even if this Court were to reverse the chancellor's finding of adverse possession, the Rainwaterses could pursue a claim for a prescriptive easement as to the road.
 

 Austin also testified that his father had done some controlled burns on the disputed property and that cows had grazed there. If the area was unfenced, as Austin testified, it is to be expected that such activities would spread across the legal property boundaries.